IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | CHAPTER 11 |
| EDGMONT GOLF CLUB, INC., *et al.* | BANKRUPTCY NO. 13-19358(SR) and 13-19359(SR) |
| Debtors | |

### APPLICATION OF DEBTORS TO EMPLOY SSG ADVISORS, LLC AS INVESTMENT BANKERS PURSUANT TO 11 U.S.C. §§ 327 AND 328(a) AND FED.R.BANKR.P. 2014

Edgmont Golf Club, Inc. and Edgmont Country Club (collectively, the "Debtors"), by and through their counsel, Maschmeyer Karalis P.C., hereby make this application to employ SSG Advisors, LLC ("SSG") as investment bankers pursuant to 11 U.S.C. §§ 327 and 328(a) and Fed.R.Bankr.P. 2014 (the "Application"), and in support thereof, respectfully represents as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 327 and 328 and Fed.R.Bankr.P. 2014.

### BACKGROUND

4. On October 28, 2013 (the "Petition Date"), the Debtors each filed a voluntary petition for relief with the Court under Chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No request for the appointment of a trustee or examiner has been made in these Chapter 11 cases.

6. No official committee of unsecured creditors has been appointed.

7. A detailed description of the Debtors' businesses and the facts precipitating the filing of the Debtors' Chapter 11 proceedings is set forth in the Declaration of Peter Mariani in Support of First Day Motions. Those facts, to the extent relevant, are incorporated herein by reference.

8. The Debtors have determined that they require the services of SSG to provide investment banking services, on an exclusive basis, focusing on the sale of all or part of the Debtors' assets (the "Sale"). The engagement agreement dated December 5, 2013 (the "Engagement Agreement") is attached hereto as Exhibit "A" and made a part hereof.

## QUALIFICATIONS OF SSG

9. The Debtors have made a careful and diligent inquiry into the qualifications and competence of SSG and is advised that SSG is capable of providing the proper services in these proceedings.

10. The Debtors have selected SSG based on its experience and expertise in providing investment banking services. SSG's investment banking professionals have extensive experience in Chapter 11 cases and have served as investment bankers to numerous debtors, Chapter 11 trustees, creditors' committees, and buyers in Chapter 11 proceedings in this Circuit, including, but not limited to, Woodcrest Country Club, Cooper-Booth Wholesale Company, L.P., Sno Mountain, L.P., Lower Bucks Hospital, Reading Broadcasting, TCIM, Blitz U.S.A., Goldman Industrial Group, Langston, CanFibre, U.S. Wireless, Network Access Solutions, Coram, AstroPower, Glass Group, Imperial Home Decor Group, Summit Metals, Miix Insurance, American Business Financial Services, Diamond Glass, Boscov's, Zestra

Laboratories, Nobex, Pharmaceutical Formulations, BT Tires Group Holding, Ritz Camera Centers, Joann Fabrics, PCAA, Aerothrust, Trade Secret, Hussey Copper, BNA, Townsends, Thompson Publishing, Wolverine, Broadsign and American Laser Centers.

11.    SSG is not a creditor, insider or affiliate of the Debtors and has never provided any services to the Debtors or their principals.

12.    The Debtors believe, and therefore aver, that the employment of SSG is necessary and in the best interest of the Debtors' estates. A Verified Statement executed by SSG's Managing Director, J. Scott Victor, asserting, among other things, that SSG does not hold any interest materially adverse to the Debtors' estates is attached hereto as Exhibit "B" and made a part hereof.

## SERVICES TO BE PROVIDED BY SSG

13.    The services which SSG will provide to the Debtors in connection with the Sale include, but are not limited to, the following:

   a.   Prepare an information memorandum describing the Debtors, their historical performance and prospects, including existing contracts, marketing and sales, labor force, management, golf census data, financial data and real estate information;

   b.   Assist the Debtors in compiling a data room of any necessary and appropriate documents related to the Sale;

   c.   Assist the Debtors in developing a list of suitable potential buyers who will be contacted on a discreet and confidential basis after approval by the Debtors;

   d.   Coordinate the execution of confidentiality agreements for potential buyers wishing to review the information memorandum;

   e.   Assist the Debtors in coordinating site visits for interested buyers and work with the management team to develop appropriate presentations for such visits;

   f.   Solicit competitive offers from potential buyers;

      g.    Advise and assist the Debtors in structuring the transaction and negotiating the transaction agreements;

      h.    Provide testimony in support of the Sale; and

      i.    Otherwise assist the Debtors, their attorneys and financial advisors, as necessary, through closing on a best efforts basis.

See, Exhibit "A".

## PROFESSIONAL COMPENSATION AND INDEMNIFICATION

14. As compensation for providing the foregoing services, SSG shall receive the following:

      a.    <u>Sale Fee</u>. Upon the consummation of a sale transaction, SSG shall be entitled to a fee (the "Sale Fee"), payable in cash, in federal funds via wire transfer or certified check, at and as a condition of closing of such sale, equal to: (a) four percent (4.0%) of Total Consideration[1] up to $17.0 million; plus (b) five percent (5%) of Total Consideration over $17.0 million.

      b.    In addition to the foregoing Sale Fee, SSG will be entitled to accrue and seek reimbursement for all of SSG's reasonable out-of-pocket expenses incurred in the event of a Sale.

*See*, Exhibit "A".

15. The fee structure identified herein (the "Fee Structure") is consistent with and typical of compensation arrangements entered into by SSG and other comparable firms in connection with the rendering of similar services under similar circumstances. The Debtors believe that the ultimate benefit of SSG's services cannot be measured by reference to the number of hours to be expended by SSG's professionals in the performance of such services. Indeed, the Debtors and SSG have agreed upon the Fee Structure in anticipation that (a) a substantial commitment of professional time and effort has been and will continue to be required

---

[1] "Total Consideration" shall mean the purchase price paid for the assets or secured debt, or any portion of either.

of SSG in connection with this case, (b) such commitment may foreclose other opportunities for SSG, and (c) the actual time and commitment required of SSG and its professionals to perform its services under the Engagement Agreement may vary substantially from week to week and month to month, creating "peak load" issues for SSG.

16. SSG will maintain records in support of any expenses incurred in connection with the rendering of its services in this case. As all of SSG's compensation will be calculated and paid based on the Sale Fee, SSG requests that it not be required to file detailed time records.

17. The Sale Fee to be paid to SSG for services rendered and costs incurred on the Debtors' behalf shall be subject to and conditioned upon the approval of this Court pursuant to 11 U.S.C. § 330 and in accordance with <u>In Re Busy Beaver Building Centers, Inc.</u>, 19 F. 3d 33 (3rd Cir. 1994).

18. The Debtors agrees to indemnify SSG in accordance with the indemnification provisions set forth in the Engagement Agreement.

## **TERM OF ENGAGEMENT**

19. The Engagement Agreement shall remain in force (the "<u>Engagement Term</u>") for a period of six (6) months from the date of signing the Engagement Agreement and may thereafter be terminated by either party upon thirty (30) days prior written notice to the other; provided, however, that either party may terminate this Engagement Agreement by written notice immediately upon the closing of a Sale.

20. Upon the termination of the Engagement Agreement, neither party shall have any further obligations to the other except that: (a) termination of the Engagement Agreement shall not affect SSG's right to indemnification under the indemnification provisions of the Engagement Agreement; (b) the Debtors shall remain obligated to reimburse SSG for any

expenses incurred through the date of the termination of the Engagement Agreement; and (c) if a Sale is consummated within six (6) months of the termination of the Engagement Agreement with a party with whom SSG had contact during the Engagement Term, the Debtors shall remain obligated to pay the Sale Fee. Sections B, D, E, F and G of the Engagement Agreement shall survive the expiration or termination of the Engagement Agreement indefinitely.

## RELIEF REQUESTED

21.     By this Application, the Debtors requests that the Court enter an order authorizing the employment of SSG as investment bankers to provide the services described herein pursuant to 11 U.S.C. §§ 327 and 328 and Fed.R.Bankr.P. 2014.

22.     SSG has not entered into any agreement to share such compensation as it may be awarded herein except as permitted under 11 U.S.C. § 504(b).

23.     Section 327(a) of the Bankruptcy Code provides, in relevant part, as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

24.     Bankruptcy Rule 2014(a) provides, in relevant part, as follows:

> An order approving the employment of ... other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee. The application shall be filed and . . . a copy of the application shall be transmitted by the applicant to the United States Trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their

respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

25. Lastly, 11 U.S.C. § 328 provides in relevant part: "[t]he trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under Section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." *See*, 11 U.S.C. § 328(a).

26. The Debtors contends that SSG's employment is necessary and in the best interests of the Debtors' estates.

**WHEREFORE,** the Debtors respectfully request that this Honorable Court enter an order authorizing the employment of SSG as investment bankers and for such other and further relief as this Honorable Court deems just.

        **Respectfully submitted,**

        **MASCHMEYER KARALIS P.C.**

        By:   /s/ Robert W. Seitzer
            ARIS J. KARALIS
            ROBERT W. SEITZER
            1900 Spruce Street
            Philadelphia, PA 19103
            (215) 546-4500
            Attorneys for the Debtors

Dated: December 11, 2013