## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re:** | : | **CHAPTER 11** |
| | : | |
| **EDGMONT GOLF CLUB, INC.,** *et al.* | : | **BANKRUPTCY NO. 13-19358(SR)** |
| | : | **and 13-19359(SR)** |
| **Debtors** | : | |
| | : | |

## FINAL ORDER AUTHORIZING SECURED POST-PETITION
## FINANCING UNDER § 364(c) OF THE BANKRUPTCY CODE

**AND NOW**, this _19th_ day of March, 2014, upon the motion (the "Motion") of

Edgmont Golf Club, Inc. and Edgmont Country Club (collectively, the "Debtors"), in accordance

with Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking

(a) interim and final authorization and approval under §§ 105 and 364(c) of Title 11 of the

United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"), for post-petition

financing and loan (the "DIP Loan") from Frank J. Mariani Trust (the "Trust") and Phyllis Ann

a/k/a Pam Mariani ("Mariani") (at times, the Trust and Mariani are collectively referred to herein

as the "DIP Lender"), (b) pending a final hearing on the Motion to obtain a secured post-petition

loan from the DIP Lender under the terms and conditions set forth herein (the "Interim Post-

Petition Loan") pursuant to § 364(c) of the Bankruptcy Code, (c) requesting, in accordance with

Bankruptcy Rule 4001(c)(2), that this Court hold an interim hearing (the "Interim Hearing") on

the Motion to consider entry of an interim order under Bankruptcy Rule 4001(c)(2) authorizing

and approving the relief requested therein and that a final hearing (the "Final Hearing")

thereafter be held for this Court to consider entry of an order authorizing and approving relief on

a permanent basis and (d) seeking related relief; and the and the Interim Hearing having been

held and concluded on January 29, 2014, and the Interim Order having been entered on January

29, 2014; and the Final Hearing having been held and concluded on the date hereof; and upon all

of the pleadings filed with the Court and all of the proceedings held before the Court; and after due deliberation and consideration and good and sufficient cause appearing therefore, **IT IS HEREBY FOUND THAT:**

A. This Court has jurisdiction over this proceeding and the parties in interest and properties and interests in properties affected hereby under §§ 157(b) and 1334, title 28, United States Code (the "Judiciary Code"), consideration of the Motion constitutes a core proceeding under §§ 157(b)(2)(A), (D), (K), and (O) of the Judiciary Code.

B. The required notice of the Motion has been given in accordance with Bankruptcy Rule 4001, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, §§ 102(1) and 364 of the Bankruptcy Code, and the applicable Bankruptcy Rules, including, without limitation, Bankruptcy Rule 4001(d)(1), (2) and (3), in respect of the relief requested in the Motion.

C. The Debtors have an immediate need to obtain the DIP Loan, in order to, among other things, permit the orderly continuation of the Debtors' businesses, preserve the going concern value of the Debtors, make payroll and satisfy other working capital and general corporate purposes of the Debtors. The DIP Loan is necessary for the Debtors to operate in the ordinary course. In the absence of the availability of funds in accordance with the terms hereof, the Debtors' continued operation would not be possible, and serious and irreparable harm to the Debtors, their estates, their creditors and equity holders would occur.

D. The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lender. Specifically, the Debtors are unable to obtain (a) adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense, (b) credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code, (c) credit for money borrowed

secured solely by a lien on property of the estate that is not otherwise subject to a lien, or (d)

credit for money borrowed secured by a junior lien on property of the estate which is subject to a

lien, in each case, on more favorable terms and conditions than those provided in the DIP Loan

and this Order.   The Debtors are also not able to obtain credit for borrowed money without

granting the DIP Liens (as defined below)

        E.      The liens held by PNC Bank, N.A. ("PNC"), including any liens provided to PNC

subsequent to the Petition Date pursuant to the various Orders and Stipulations authorizing the

Debtors to use cash collateral that have been or will be entered and/or approved by this Court, and

any other perfected lien as of the Petition Date (collectively, the "Permitted Liens") shall be senior

to the liens granted to the DIP Lender to secure the DIP Loan.  For the avoidance of any doubt, any

future liens provided to PNC pursuant to subsequent Orders or Stipulations relating to the use of

cash collateral entered and/or approved by this Court shall be considered Permitted Liens for

purposes of this Order.

        F.      The DIP Loan has been negotiated in good faith and at arm's length between the

Debtors and the DIP Lender and any credit extended and loans made to the Debtors by the DIP

Lender shall be deemed to have been extended and made in good faith within the meaning of §

364(e) of the Bankruptcy Code.

        G.      The DIP Lender shall make advances to the Debtors in an amount not to exceed

One Hundred and Fifty Thousand ($150,000.00) Dollars in accordance with the terms identified

in the Motion.

        H.      The Debtors shall use the DIP Loan to pay its operating expenses.

        I.      Absent receiving the proceeds of the DIP Loan, the Debtors would be unable,

inter alia, to pay their operating expenses as they come due.

        J.      The Debtors have taken all actions and obtained all approvals required to enter

into the DIP Loan.

K.      The DIP Loan shall accrue interest at the rate of five percent (5%) per annum.

L.      The maturity date of the DIP Loan shall be the earlier of: (i) the Effective Date of any plan(s) confirmed by the Debtors; (ii) closing on the sale of substantially all of the Debtors' assets, or (iii) March 31, 2015.

M.      Notwithstanding the above-stated maturity date, the DIP Loan shall not be repaid until all of PNC's claims are paid in full, including any amounts that have accrued or will accrue subsequent to the Petition Date.

N.      After the Petition Date, Mariani advanced the sum of $5,913.88 (the "Mariani Advance") to the Debtors to cover payroll and other essential obligations. Absent the Mariani Advance, the Debtors' operations would have been severely jeopardized.

**ACCORDINGLY, THE FOREGOING BACKGROUND INCORPORATED BY REFERENCE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED** in all respects.

2.      The DIP Loan is hereby authorized and approved in all respects, subject to the terms and conditions set forth in this Order, and the Debtors are hereby authorized and directed to comply with its obligations under such loan. The Debtors are authorized to borrow and the DIP Lender is authorized to advance the sum of One Hundred and Fifty Thousand ($150,000.00) Dollars without further Order of the Bankruptcy Court and without execution of loan documents.

3.      The Debtors are authorized and directed to effect all actions and to execute and deliver all agreements, instruments and documents reasonably requested by the DIP Lender that may be required or necessary related to the DIP Loan.

4.      The Trust and Mariani shall make the advances contemplated under the DIP Loan on a *pari passu* basis. As such, the Trust and Mariani shall pay equal sums for each advance.

5.      As security for the obligations of the Debtors arising under the DIP Loan, effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Lender of any property, the following security interests and liens are hereby granted to the DIP Lender (all property of the Debtors identified in clause (a) below being collectively referred to as the "DIP Collateral") (all such liens and security interests granted to the DIP Lender pursuant to this Order, the "DIP Liens"):

(a)      Pursuant to section 364(c)(3) of the Bankruptcy Code, subject to the Permitted Liens, a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all real and personal property now owned or hereafter acquired that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Lender shall be junior to the Permitted Liens.

6.      The DIP Collateral shall not include avoidance actions under Chapter 5 of the Bankruptcy Code or the proceeds thereof.

7.      The Debtors stipulate and consent that all DIP Liens granted herein shall, pursuant to this Order, be, and hereby are, valid, enforceable and perfected, effective as of the date of this Order, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code or any other relevant law or regulation of any jurisdiction) no further notice, filing or other act shall be required to effect such perfection.

8.      The DIP Lender is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any

jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the DIP Liens granted to it hereunder. Regardless of whether the DIP Lender shall, in its sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the DIP Liens, such DIP Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order.

9.      A certified copy of this Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Order for filing and recording. The DIP Lender may deliver a copy of this Order to any third parties having possession or control of the DIP Collateral.

10.     The Debtors shall execute and deliver to the DIP Lender all such agreements, financing statements, instruments and other documents as the DIP Lender may reasonably request to evidence, confirm, validate or perfect the DIP Liens.

11.     The Debtors are authorized and directed to make such payments to the DIP Lender as are required pursuant to this Order under the provisions of the DIP Loan as defined in the Motion.

12.     The Mariani Advance shall constitute an administrative expense claim under Section 503(b)(1) of the Bankruptcy Code which shall be paid upon the Effective Date of any plan(s) confirmed by the Debtors.

13.     The provisions of this Order shall be binding upon the DIP Lender, the Debtors, and all creditors in the Debtors' bankruptcy cases and their respective successors and assigns

including, without limitation, any trustee hereinafter appointed for the estates of the Debtors.   If

any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent

order of this Court or any other Court, such stay, modification or vacatur shall not affect the

validity of any obligation to the DIP Lender or the validity and enforceability of any priority

authorized or created by this Order, in either case that is or was incurred or created prior to the

effective date of such stay, modification or vacatur and, notwithstanding such stay, modification

or vacatur, any obligations of the Debtors pursuant to this Order arising prior to the effective date

of such stay, modification or vacatur shall be governed in all respects by the original provisions

of this Order, and the validity of any such credit extended pursuant to this Order is subject to the

protection accorded under Section 364(e) of the Bankruptcy Code.

14.    To the extent of any inconsistency between this Order and the Interim Order, this

Order shall control.

BY THE COURT:

HONORABLE STEPHEN RASLAVICH,
UNITED STATES BANKRUPTCY JUDGE