## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| _____ | : | |
| **In re:** | : | **CHAPTER 11** |
| | : | |
| **EDGMONT GOLF CLUB, INC.** | : | **BANKRUPTCY NO. 13-19358(SR)** |
| | : | |
| **Debtor** | : | |
| _____ | : | |
| **In re:** | : | **CHAPTER 11** |
| | : | |
| **EDGMONT COUNTRY CLUB** | : | **BANKRUPTCY NO. 13-19359(SR)** |
| | : | |
| **Debtor** | : | |
| _____ | : | |

_____

## JOINT PLAN OF REORGANIZATION PROPOSED BY
## DEBTORS-IN-POSSESSION
_____

ARIS J. KARALIS, ESQUIRE
MASCHMEYER KARALIS P.C.
1900 Spruce Street
Philadelphia, PA 19103
(215) 546-4500
Attorneys for the Debtor

Dated: February 27, 2015

## TABLE OF CONTENTS

ARTICLE 1    Definitions, Rules of Interpretation, and Computation of Time ............................ 1
    A.    Definitions ........................................................................................................... 1
    B.    Rules of Interpretation ...................................................................................... 9
    C.    Computation of Time ......................................................................................... 9
    D.    References to Monetary Figures ......................................................................... 9
    E.    Exhibits .............................................................................................................. 9

ARTICLE 2    Classification, Description and Impairment of Claims and Interests ................. 10
    2.1    Summary of Claims ......................................................................................... 10
    2.2    Classification of Claims .................................................................................. 10
    2.3    Administrative Claims, Priority Tax Claims and DIP Loan ............................... 12

ARTICLE 3    Treatment of Claims and Interests ....................................................................... 12
    Edgmont Golf Club, Inc. ............................................................................................. 12
    3.1    Class 1A.  Secured Claims of Property Tax Liens ........................................... 12
    3.2    Class 1B.  Secured Claim of PNC Bank .......................................................... 13
    3.3    Class 1C.  Priority Non-Tax Claims ................................................................. 14
    3.4    Class 1D.  General Unsecured Claims ............................................................. 15
    3.5    Class 1E.  Interest Holders .............................................................................. 15
    Edgmont Country Club. .............................................................................................. 15
    3.6    Class 2A.  Secured Claim of PNC Bank .......................................................... 15
    3.7    Class 2B.  Priority Non-Tax Claims ................................................................. 16
    3.8    Class 2C.  General Unsecured Claims ............................................................. 16
    3.9    Class 2D.  Interest Holders .............................................................................. 16

ARTICLE 4    Treatment of Unclassified Claims and DIP Loan ................................................ 16
    4.1    Administrative Claims ..................................................................................... 16
        4.1.1  Time for Filing Administrative Claims ..................................................... 16
        4.1.2  Time for Filing Fee Claims ...................................................................... 17
        4.1.3  Allowance of Administrative Claims ........................................................ 17
        4.1.4  Payment of Allowed Administrative Claim ............................................... 17
        4.1.5  Professional Fees Incurred After the Effective Date ................................ 17
        4.1.6  General Provisions .................................................................................. 17
    4.2    Treatment of Priority Tax Claims .................................................................... 17
    4.3    No Liability for Certain Tax Claims ................................................................. 18
    4.4    Treatment of DIP Loan .................................................................................... 18

ARTICLE 5    Acceptance or Rejection of the Plan ..................................................................... 18
    5.1    Impaired Classes of Claims and Interests Entitled to Vote .............................. 18
    5.2    Acceptance by an Impaired Class .................................................................... 18
    5.3    Presumed Acceptances by Unimpaired Classes .............................................. 18
    5.4    Confirmation Pursuant to §1159(b) of the Bankruptcy Code ............................ 18

ARTICLE 6    Provisions For Execution of The Plan .................................................................. 18

| | | |
|---|---|---|
| 6.1 | Revesting of Assets | 18 |
| 6.2 | Post-Confirmation Operations of Country Club | 19 |
| 6.3 | Sale of Real Property | 19 |
| 6.4 | Payment of Deposit | 19 |
| 6.5 | Sale of Real Property is Free and Clear of Liens, Claims and Interests | 20 |
| 6.6 | Disbursements and Investment of Funds | 21 |
| 6.7 | Final Decree | 21 |
| 6.8 | Continued Existence of the Debtors | 21 |
| 6.9 | Corporate Action | 21 |
| 6.10 | Effectuating Documents & Further Transactions | 21 |
| 6.11 | Post-Confirmation Officer and Director; Compensation | 21 |
| 6.12 | Preservation of Insurance | 22 |
| 6.13 | Transactions under Sale Agreement are Transfers Under the Plan | 22 |
| 6.14 | Exemption from Transfer Taxes | 22 |
| 6.15 | Execution of Documents Extinguishing Liens | 23 |
| ARTICLE 7 | Provisions Governing Distributions, General Provisions and Conditions Precedent | 23 |
| 7.1 | Distributions | 23 |
| 7.2 | Notices | 24 |
| 7.3 | Default | 25 |
| 7.4 | No Interest or Attorneys' Fees | 25 |
| 7.5 | Cramdown Provision and Confirmation Request | 25 |
| 7.6 | Conditions Precedent to Confirmation | 25 |
| 7.7 | Conditions Precedent to the Occurrence of the Effective Date | 26 |
| 7.8 | Waiver of Conditions to Occurrence of Effective Date or Confirmation | 26 |
| ARTICLE 8 | Executory Contracts | 26 |
| 8.1 | Assumed Executory Contracts and Unexpired Leases | 26 |
| 8.2 | Rejected Executory Contracts and Unexpired Leases | 26 |
| 8.3 | Payments Related to Assumption of Executory Contracts or Unexpired Leases | 27 |
| 8.4 | Rejection Damages Bar Date | 27 |
| ARTICLE 9 | Causes of Action | 27 |
| 9.1 | Retention, Enforcement and Waiver of Claims | 27 |
| 9.2 | Powers | 27 |
| ARTICLE 10 | Provisions for Resolving and Treating Disputed Claims | 27 |
| 10.1 | Objections to Claims; Prosecution of Disputed Claims | 27 |
| 10.2 | Late Filed Claims | 28 |
| 10.3 | No Distributions Pending Allowance | 28 |
| 10.4 | Reserve for Disputed Unsecured Claims | 28 |
| 10.5 | Estimation Period | 28 |
| 10.6 | Distributions After Allowance | 29 |
| 10.7 | Objection Deadline | 29 |

ARTICLE 11  Retention of Jurisdiction ..................................................................... 29

ARTICLE 12  Miscellaneous .................................................................................... 30
    12.1   Choice of Law ................................................................................ 30
    12.2   Payment of Statutory Fees .............................................................. 30
    12.3   Discharge of Debtors ...................................................................... 30
    12.4   Discharge of Claims; Injunction ..................................................... 31
    12.5   Effect of Confirmation Order .......................................................... 31
    12.6   No Admissions or Waivers .............................................................. 31
    12.7   Severability .................................................................................... 31
    12.8   Binding Effect ................................................................................ 31
    12.9   Withholding and Reporting Requirements ....................................... 32
    12.10  Automatic Stay ............................................................................... 32
    12.11  Modification and Amendments ........................................................ 32
    12.12  Right to Revoke or Withdraw .......................................................... 32
    12.13  Effect of Withdrawal, Revocation, or Non-Consummation ............... 32
    12.14  Liability in Connection with Plan .................................................... 32
    12.15  Exculpation .................................................................................... 33
    12.16  Remedy of Technical Defects .......................................................... 33
    12.17  Surrender and Cancellation of Instruments ..................................... 33

Edgmont Golf Club, Inc. and Edgmont Country Club, the Debtors and Debtors-in-Possession (as such terms are hereinafter defined), hereby propose this Joint Reorganization Plan (the "Plan") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §101, et seq. Reference is made to the Disclosure Statement accompanying the Plan for a discussion of the Debtors' history, business, results of operations, historical financial information, properties, projections for future operations and risk factors, a summary and analysis of the Plan, and certain related matters.

ALL CREDITORS OF THE DEBTORS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019 AND THE PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION. THE DEBTORS HAVE OBTAINED BANKRUPTCY COURT AUTHORITY TO HAVE THESE CHAPTER 11 CASES JOINTLY ADMINISTERED FOR ADMINISTRATIVE AND PROCEDURAL PURPOSES ONLY.

## ARTICLE 1 - DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

A.    **Definitions**

1.1    **Accounts Receivable:**  Any account as that term is defined in the Pennsylvania Uniform Commercial Code (the "PA U.C.C."), and includes any right of the Debtors to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper (as those terms are defined in the PA U.C.C.), whether or not it has been earned by performance.

1.2    **Administrative Claim:**  A claim under §503 of the Bankruptcy Code that is entitled to priority under §507(a)(2) of the Bankruptcy Code.

1.3    **Administrative Claimant:**  The holder of an Administrative Claim.

1.4    **Allowed:**  The use of the term "Allowed" with reference to a Claim or Interest e.g., "Allowed Unsecured Claim") shall mean one which: (a) is listed in the bankruptcy schedules or list of equity security holders (including any amendments thereto) filed in these Chapter 11 Cases as of the Confirmation Date and (i) not listed therein as disputed, contingent or unliquidated or (ii) not objected to by the Debtors or any other party in interest; (b) is set forth in a Proof of Claim or Interest properly filed in these Chapter 11 Cases on or before the date fixed by the Bankruptcy Court (or by applicable rule or statute) as the last day for filing such proof and as to which no objection is timely filed; or (c) is determined to be Allowed by a Final Order.

1.5    **Assets of ECC Debtor**:  The ECC Debtor's personal property, tangible and

intangible, including, without limitation, cash, Accounts Receivable, goods, inventory, catering club liquor license (license no. CC2032), chattel paper, documents, instruments, money, fixtures, contract rights, general intangibles, insurance proceeds, Causes of Action, claims and rights of any kind, wherever situated, together with the proceeds thereof.

1.6   **Assets of EGC Debtor:**   The EGC Debtor's Real Property and personal property, tangible and intangible, including, without limitation, cash, Accounts Receivable, goods, equipment, inventory, chattel paper, documents, instruments, money, fixtures, contract rights, general intangibles, insurance proceeds, tax refunds, Causes of Action, claims and rights of any kind, wherever situated, together with the proceeds thereof.

1.7   **Avoidance Actions:**   Actions of any Debtor against Persons arising under the Bankruptcy Code, including, §§ 544, 545, 547, 548 through 551 and 553 thereof, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation has been commenced as of the Confirmation Date to prosecute such actions.

1.8   **Bankruptcy Code:**   The United States Bankruptcy Code, 11 U.S.C. §101, et seq. as amended from time to time, applicable to these Chapter 11 Cases as of the Petition Date.

1.9   **Bankruptcy Court:**   The United States Bankruptcy Court for the Eastern District of Pennsylvania and the United States District Court for the Eastern District of Pennsylvania to the extent that, in respect of the proceedings, matter or a portion of the case to which the term applies, such district court may have withdrawn reference, shall have determined to exercise original jurisdiction or shall have sole authority to enter a final order or judgment.

1.10   **Bankruptcy Rules:**   The Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to these Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to these Chapter 11 Cases or proceedings therein, as the case may be.

1.11   **Bar Date:**   The deadline set by the Bankruptcy Court for filing of proofs of claim or interest in these Chapter 11 Cases. For pre-petition Claims (other than those of governmental units) and Interests, the Bar Date fixed by Order of the Court was **February 14, 2014** (the "General Bar Date"). For pre-petition Claims of governmental units, in accordance with 502(b)(9) of the Bankruptcy Code, the Bar Date is fixed by Order of the Court is **April 26, 2014** (the "Governmental Bar Date").

1.12   **Break-Up Fee:**   The sum of Three Hundred Fourteen Thousand Dollars ($314,000.00) which will be due to Purchaser if a Break-Up Fee Event occurs.

1.13   **Break-Up Fee Event:** Any of the following events (but only the following events), provided that Purchaser has not terminated the Sale Agreement before the expiration of the Due Diligence Period: (A) the Confirmation Order is not entered confirming the Plan and

2

authorizing the sale of the Property (as defined in the Sale Agreement) under the Sale Agreement to Purchaser; or (B) an order is entered by the Court authorizing a sale of the Property (as defined in the Sale Agreement) to any person other than the Purchaser, its affiliate or designee; or (C) the Debtor fails to close on the sale of the Property (as defined in the Sale Agreement) to Purchaser under the Sale Agreement (other than due to an uncured Purchaser's Default(as defined in the Sale Agreement)); and (D) and the Debtor sells the Property (as defined in the Sale Agreement) to any person other than the Purchaser, its affiliate or designee.   Following the occurrence of a Break-Up Fee Event, at the time of the closing on the sale or other conveyance of the Property (as defined in the Sale Agreement), in whole or in part, to any other person, Debtor shall pay the Break-Up Fee to Purchaser, and satisfy its obligations under the Mortgage (as defined in the Sale Agreement) which includes the Carry Payments to the extent that Purchaser released the Deposit to the Debtor.  No Break-Up Fee Event shall be deemed to occur nor shall any Break-Up Fee be due or payable to Purchaser in the event that Purchaser terminates this Agreement prior to the expiration of the Due Diligence Period or any extensions thereof, or fails to pay the Deposit to Debtor following the Confirmation Date pursuant to the provisions of the Sale Agreement.

1.14 **Business Day:** Any day other than a Saturday, Sunday, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks in Philadelphia, Pennsylvania are required or authorized by law to close.

1.15 **Causes of Action:** Any and all actions of any Debtor (excluding Avoidance Actions), proceedings, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, unless otherwise waived or released by the Debtors or applicable Debtor.

1.16 **Chapter 11 Cases:** Individually, any of the above captioned cases and, collectively, the above captioned cases pending for the Debtors, presently captioned, In re Edgmont Golf Club, Inc., et. al, which are jointly administered under Case No. 13-19358(SR).

1.17 **Claim:** A claim, whether or not asserted, against any of the Debtors as defined in §101(5) of the Bankruptcy Code and is intended to include, without limitation, any claim, suit, demand, note, liability, setoff, recoupment or charge, and any claim for reimbursement, contribution, indemnity or exoneration.

1.18 **Claimant:** A person or entity holding a Claim or Interest (including his, her or its successors, assigns, heirs, executors or personal representatives).

1.19 **Collateral:** Any property or interest in property of the Debtors' estates which is subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.20 **Confirmation:** The entry by the Bankruptcy Court of an order confirming this Plan.

3

1.21    **Confirmation Date:**  The date on which the Bankruptcy Court shall enter an order confirming this Plan in accordance with the provisions of the Bankruptcy Code.

1.22    **Confirmation Hearing:**    The hearing at which the Court considers confirmation of this Plan.

1.23    **Confirmation Order:**  The order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code.

1.24    **Creditor:**  The holder of a Claim against one or more of the  Debtors.

1.25    **Debtor:**  Edgmont Golf Club, Inc. or Edgmont Country Club.

1.26    **Debtors:**  Edgmont Golf Club, Inc. and Edgmont Country Club.

1.27    **Debtor-in-Possession or Debtors-in-Possession:**    Individually, a Debtor and collectively, the Debtors, in their capacity as a debtors-in-possession in these Chapter 11 Cases and with the status and rights conferred pursuant to §§1107(a) and 1108 of the Bankruptcy Code.

1.28    **Deficiency Claim:**  With reference to a Creditor having an Allowed Secured Claim, that portion of the Creditor's Allowed Claim that is partially secured because (a) the monetary benefit derived from the exercise of any available right of setoff and the application to the Claim of the net proceeds available from disposition of the Collateral securing the Creditor's Allowed Claim is insufficient to permit payment in full of the Allowed Claim, or (b) a Final Order entered in a proceeding to determine the extent of the Secured Claim provides that part of the Creditor's Allowed Claim is not an Allowed Secured Claim based on a valuation of the Creditor's interest in the Debtors' estates' interest in the Collateral securing the Claim.

1.29    **Deposit:**  The amount of $6,000,000 to be paid by the Purchaser to the EGC Debtor one day following the date the Confirmation Order becomes a Final Order subject to the terms of the Sale Agreement.  The Deposit paid to the EGC Debtor shall be credited against the Purchase Price and will be secured by a first mortgage Lien on the Real Property subject to the terms of the Sale Agreement.

1.30    **DIP Loan:**    The loan approved by Final Order dated March 19, 2014 authorizing Pam Mariani and the Trust to advance to the Debtors the amount of $150,000 on a revolving basis as needed, secured by, a valid, perfected security interest and Lien in all the Assets of EGC Debtor and the Assets of ECC Debtor and their Estates subordinate only to the Property Tax Liens and the Liens held by PNC Bank.

1.31    **Disallowed Claim or Disallowed Interest:**  A Claim or any portion thereof, or an Interest or any portion thereof, that (a) has been disallowed by a Final Order, (b) is Scheduled as zero, unknown, contingent, disputed or unliquidated and as to which a proof of claim or interest bar date has been established but no proof of claim or interest has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code

4

or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) is not Scheduled and as to which a proof of claim or interest bar date has been established but no proof of claim or interest has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.32    **Disbursing Agent:**  The EGC Debtor.

1.33    **Disclosure Statement:**  The joint Disclosure Statement of the Debtors dated February 27, 2015 and filed by the Debtors pursuant to §1125 of the Bankruptcy Code, as amended from time to time.

1.34    **Disputed Claim:**  Any claim or Interest which is scheduled as zero, unknown, as disputed, contingent or unliquidated, or which is objected to, in whole or in part, before the Effective Date.

1.35    **Disputed Unsecured Claim Reserve:**  In the event there exists any disputed unsecured claim on or after the Effective Date, cash to be set aside by the applicable Debtor pursuant to Section 10.4 of the Plan, in an amount sufficient to pay the distributions to all Disputed Unsecured Claims at the time such Distributions are made in accordance with the provisions of the Plan, if such Disputed Unsecured Claims become Allowed Claims.

1.36    **Distribution:**  Any payment by the Debtors or the Disbursing Agent to a Creditor on account of a Claim.

1.37    **Distribution Date:**  The date, selected by the Disbursing Agent occurring as soon as practicable after the Effective Date, upon which Distributions to holders of Allowed Claims entitled to receive Distributions under the Plan shall commence.

1.38    **Due Diligence Period**: A period of ninety (90) days following the date of execution of the Sale Agreement by Debtor and Purchaser.  The Sale Agreement is dated February 24, 2015 and the Due Diligence Period expires on May 26, 2015.

1.39    **ECC Debtor:**  The Edgmont Country Club Debtor.

1.40    **EGC Debtor:**  The Edgmont Golf Club, Inc. Debtor.

1.41    **Effective Date:**  The first Business Day after the date when all the conditions precedent to the occurrence of the Effective Date set forth in Section 7.7 hereof have been satisfied or waived as provided by Section 7.8 hereof.  However, at the option of the Debtors, a Confirmation Order subject to a pending appeal or certiorari proceeding may be considered a Final Order provided no order has been entered by any court of competent jurisdiction staying the effect of the Confirmation Order.

1.42    **Entity:**  The meaning set forth in §101(15) of the Bankruptcy Code.

1.43    **Estates:**  Collectively, the bankruptcy estates of the Debtors created pursuant to §541 of the Bankruptcy Code and individually, the bankruptcy estate of a Debtor.

1.44    **Exhibit:**  An exhibit attached to this Plan.

1.45    **Exhibit Filing Date:**  The date on which Exhibits to the Plan shall be filed with the Bankruptcy Court, which date shall be at least five days prior to the voting deadline for this Plan or such later date as may be approved by the Bankruptcy Court.

1.46    **Fee Claim:**  A claim under §§ 328, 330(a) or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in these Chapter 11 Cases.

1.47    **Final Order:**  An order entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties, as to which (i) no appeal, certiorari proceeding or other review reconsideration or rehearing has been requested or is still pending, and (ii) the time for filing a notice of appeal or petition for certiorari or further review reconsideration or rehearing has expired.

1.48    **General Unsecured Claim:**  A Claim that does not fall within another Class of Claims.

1.49    **Governmental Unit:**  A "governmental unit" as that term is defined in § 101(26) of the Bankruptcy Code.

1.50    **Impaired Class:**  Any class that is impaired within the meaning of §1124 of the Bankruptcy Code.

1.51    **Insider:**  Any "insider" as that term is defined in paragraph (B), (E) or (F) of §101(31) of the Bankruptcy Code.

1.52    **Interest:**  An equity interest in the Debtor or the right to acquire the same, including, without limitation, as a holder of a right to acquire any interest.

1.53    **Intercompany Claims:**  Any Claim held by one Debtor against the other Debtor.

1.54    **Lien:**  The meaning set forth in § 101 (37) of the Bankruptcy Code and shall include any replacement and super priority liens granted by the Bankruptcy Court.

1.55    **Pam Mariani:**  Phyllis Ann Mariani.

1.56    **Petition:**  The Petition for Relief filed by each Debtor with the Court pursuant to Chapter 11 of the Bankruptcy Code commencing each chapter 11 case.

1.57    **Petition Date:**  October 28, 2013, the date upon which each Debtor filed its Petition.

1.58    **Phyllis Ann Mariani:**  Also known as Pam Mariani.

1.59    **Plan:**  This Plan of Reorganization, as it may be further amended, modified or supplemented from time to time, and any Exhibits thereto.  References to Exhibits hereto shall include such Exhibits as they may be amended from time to time in accordance with their terms.

1.60    **Plan Proponent or Plan Proponents:**    Individually, each Debtor and collectively, the Debtors.

1.61    **PNC Bank:**  PNC Bank, N.A.

1.62    **Priority Non-Tax Claim:**  Any Claim or a portion of a Claim for which priority is asserted under § 507(a)(3), (4), (5), (6) or (7) of the Bankruptcy Code.

1.63    **Priority Tax Claim:**  Any Claim of a Governmental Unit of the kind specified in §§ 502(i) and 507(a)(8) of the Bankruptcy Code.

1.64    **Pro Rata:**    A proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such class (including Disputed Claims, but excluding Disallowed Claims).

1.65    **Professional Persons:**  Those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with §327 of the Bankruptcy Code and to be compensated for services rendered to the Debtors prior to the Effective Date, pursuant to §§327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to §503(b)(4) of the Bankruptcy Code.

1.66    **Purchaser:**  Okehocking Partners, LP, a Pennsylvania Limited Partnership, an affiliate of The McKee Group.

1.67    **Mariani Advance**:  The amount of $5,913.88 advanced after the Petition Date by Pam Mariani to cover payroll and other obligations and allowed by Final Order dated March 19, 2014 as an administrative expense claim under Section 503(b)(1) of the Bankruptcy Code which shall be paid on the Effective Date.

1.68    **Real Property:**  The real property located at 5180 West Chester Pike, Edgmont Township, Delaware County, (Folio Nos. 19-00-00415-00 and 19-00-00416-00) and Willistown Township, Chester County, (Parcel Nos. 54-09-0008.0000 and 54-09-0009.0000) Pennsylvania, consisting of 189.752 acres more or less.

1.69    **Rejection Claim:**  Any claim that results from the rejection of any executory contract or unexpired lease which is rejected by the Debtors by a Final Order.

1.70    **Retained Actions:**  All Causes of Action which the Debtors may hold against any Person, including, without limitation, (a) any Causes of Action brought prior to the Confirmation Date, (b) any Causes of Action against any Persons for failure to pay for products or services provided or rendered by the Debtors, and (c) any Causes of Action seeking the recovery of the Debtors' accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtors' businesses.

1.71    **Retained Property:**  The portion of the Real Property, being approximately 21.915 acres zoned Planned Office District in Edgmont Township, and approximately 4.304 acres zoned M-6, Multifamily in Willistown Township, which is being retained by the EGC Debtor and not being sold to the Purchaser.

1.72    **Reorganized Debtors:**  Collectively, the EGC Debtor and the ECC Debtor, as reorganized and existing on the Effective Date and individually, each a Debtor, as reorganized and existing on the Effective Date.

1.73    **Sale Agreement:**  The Agreement dated February 24, 2015 between the EGC Debtor and Okehocking Partners, LP for (a) the purchase and sale of the Real Property excluding the Retained Property and (b) the payment of the Deposit to fund the implementation of this Plan.

1.74    **Scheduled:**  With respect to any Claim or Interest, the status, priority, and amount, if any, of such Claim or Interest as set forth in the Schedules.

1.75    **Schedules:**  The schedules of assets and liabilities and the statement of financial affairs filed in these Chapter 11 Cases by each Debtor pursuant to Bankruptcy Rule 1007, as such schedules or statements have been or may be further modified, amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

1.76    **Secured Claim:**  Any Claim, to the extent reflected in the Schedules or a proof of claim as a Secured Claim, which is secured by a Lien on Collateral, to the extent of the value of such Lien after giving effect to all Liens senior in priority, as determined in accordance with § 506(a) of the Bankruptcy Code, or, in the event such Claim is subject to permissible setoff under § 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.77    **Trust:**  The Frank J. Mariani Trust.

1.78    **Unimpaired Class:**  A class that is not impaired within the meaning of §1124 of the Bankruptcy Code.

1.79    **Unsecured Claim:**  Any Claim, including a Rejection Claim or a Deficiency Claim, other than an Administrative Claim, Priority Non-Tax Claim, Priority Tax Claim or Secured Claim.

     1.80    **Other Terms:**    A term that is used in this Plan and not defined in this Plan, but that is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the same meaning in this Plan as it is given in the Bankruptcy Code or Bankruptcy Rules.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the provisions of this Plan unless the context otherwise clearly indicates.  The singular of a defined term shall include the plural and the plural shall include the singular.

B.    **Rules of Interpretation**.  For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (d) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (e) any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns; (f) all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (g) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (i) subject to the provisions of any contract, Articles of Incorporation, Bylaws, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with federal law, including the Bankruptcy Code and Bankruptcy Rules; and (j) the rules of construction set forth in §102 of the Bankruptcy Code will apply.

C.    **Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

D.    **References to Monetary Figures**.  All references in the Plan to monetary figures shall refer to United States of America currency, unless otherwise expressly provided.

E.    **Exhibits**.  All Exhibits are incorporated into and are a part of the Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court on or before the Exhibit Filing Date.  After the Exhibit Filing Date, copies of Exhibits can be obtained upon written request to Maschmeyer Karalis P.C., 1900 Spruce Street, Philadelphia, PA 19103 (Attention: Aris J. Karalis, Esquire), counsel to the Debtors, or by downloading such Exhibits from the Court's website at http://ecf.paeb.uscourts.gov.  To the extent any Exhibit is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-Exhibit portion of the Plan shall control.

## ARTICLE 2 - CLASSIFICATION, DESCRIPTION
## AND IMPAIRMENT OF CLAIMS AND INTERESTS

2.1 **Summary of Claims**.  The categories of Claims and Interests listed below classify Claims (except for Administrative Claims and Priority Tax Claims, which shall be treated in accordance with Article 4 of this Plan) and Interests for all purposes, including voting, confirmation and distribution, pursuant to this Plan.

| **Class** | **Description** | **Status** |
|---|---|---|
| | **Claims Against Edgmont Golf Club, Inc.** | |
| Class 1A | Class 1A consists of Secured Claims of Property Tax Liens against the EGC Debtor | Impaired; entitled to vote |
| Class 1B | Class 1B consists of Secured Claims of PNC Bank against the EGC | Impaired; entitled to vote |
| Class 1C | Class 1C consists of Priority Non-Tax Claims against the EGC Debtor. | Unimpaired; not entitled to vote. |
| Class 1D | Class 1D consists of General Unsecured Claims against the EGC Debtor. | Impaired; entitled to vote |
| Class 1E | Class 1E consists of Interests in the EGC Debtor. | Unimpaired; not entitled to vote. |
| | **Claims Against Edgmont Country Club** | |
| Class 2A | Class 2A consists of the Secured Claim of PNC Bank against the ECC Debtor. | Impaired; entitled to vote |
| Class 2B | Class 2B consists of Priority Non-Tax Claims against the ECC Debtor. | Unimpaired; not entitled to vote. |
| Class 2C | Class 2C consists of General Unsecured Claims against the ECC Debtor. | Impaired; entitled to vote |
| Class 2D | Class 2D consists of Interests in the ECC Debtor. | Unimpaired; not entitled to vote. |

2.2 **Classification of Claims**.  The Claims and Interests against the Debtors shall be classified as specified above (except for Administrative Claims and Priority Tax Claims, which shall be treated in accordance with Article 4 of this Plan).  Consistent with § 1122 of the Bankruptcy Code, a Claim or Interest is classified by the Plan in a particular Class only to the

extent the Claim or Interest is within the description of the Class, and a Claim or Interest is classified in a different Class to the extent it is within the description of that different Class. This Plan does not effect a substantive consolidation of the Debtors.

2.2.1   Unimpaired Classes.   The Plan classifies the following Unimpaired Claims and Unimpaired Interests that are not entitled to vote on the Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of a Claim or Interest in the following Classes is conclusively presumed to have accepted the Plan in respect of such Claims or Interests and is not entitled to vote to accept or reject the Plan:

Class 1C (Priority Non-Tax Claims against the EGC Debtor)

Class 1E (Interests in the EGC Debtor)

Class 2A (Priority Non-Tax Claims against the ECC Debtor)

Class 2D (Interests in the ECC Debtor)

2.2.2.   Impaired Classes Entitled to Vote.   The Plan classifies the following Classes as the only Impaired Classes that are entitled to vote to accept or reject the Plan:

Class 1A (Secured Claims of Property Tax Liens against the EGC Debtor)

Class 1B (Secured Claims of PNC Bank against the EGC Debtor)

Class 1D (Unsecured Claims against the EGC Debtor)

Class 2A (Secured Claim of PNC Bank against the ECC Debtor)

Class 2C (Unsecured Claims against the ECC Debtor)

2.2.3   The treatment in this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Entity holding an Allowed Claim or an Allowed Interest may have in or against each of the applicable Debtors or their property.  All Distributions under the Plan will be tendered to the Person holding the Allowed Claim or Allowed Interest in accordance with the terms of this Plan.  Except as specifically set forth in this Plan, no Distributions will be made and no rights will be retained on account of any Claim or Interest that is not an Allowed Claim or Allowed Interest.  At the sole discretion of the EGC Debtor, Intercompany Claims may be extinguished at any time after the Effective Date of the Plan.

2.2.4   Allowed Claims against the EGC Debtor and ECC Debtor will be satisfied solely from the respective Assets of the EGC Debtor and the Assets of ECC Debtor and their respective Estates; provided, however, the EGC Debtor may utilize the proceeds from the Deposit paid to it by the Purchaser as it elects to make the Distributions required under the Plan.  Nothing in the Plan or the Disclosure Statement shall constitute or be deemed to constitute an admission that any one of the Debtors is subject to or liable for any claim against

11

the other Debtor.  A Claim against multiple Debtors, to the extent allowed in each Debtor's case, will be treated as a separate claim against each Debtor's Estate for all purposes (including, but not limited to, voting and Distribution, provided, however, that there shall be only a single recovery on account of such Claims and any Distribution from a Debtor on account of such Claims shall take into account the Distributions to be made by the other Debtor on account of such Claims pursuant to the Plan), and such Claim will be administered and treated in the manner provided in the Plan.  No holder of a Claim against multiple Debtors shall receive more than 100% on account of such Claim.

2.3    **Administrative Claims, Priority Tax Claims and DIP Loan**.  As provided in § 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims shall not be classified for purposes of voting or receiving distributions under the Plan. Further, the Claims arising in connection with the DIP Loan are also not classified for purposes of voting or receiving distributions under the Plan.  Rather, all such Claims shall be treated separately as unclassified Claims pursuant to the terms set forth in Article 4 of this Plan.

### ARTICLE 3
### TREATMENT OF CLAIMS AND INTERESTS

### Edgmont Golf Club, Inc.

3.1    **Class 1A.  Secured Claims of Property Tax Liens.**  Class 1A is impaired. The treatment and consideration to be received by holders of Allowed Class 1A Secured Claims of Property Tax Liens shall be in full settlement, satisfaction, release and discharge of its respective secured claims and liens.

3.1.1   Amount of Allowed Property Tax Liens.   The Allowed Property Tax Liens shall equal (a) the amount of unpaid property taxes for the Real Property due to Chester County, Willistown Township and the Great Valley School District as of the Petition Date and (b) the amount of unpaid property taxes for the Real Property due to Delaware County, Edgmont Township and the Rose Tree Media School District as of the Petition Date.

3.1.2   Claims Filed by the holders of Property Tax Liens.  The Chester County Tax Claim Bureau filed a proof of claim against the EGC Debtor (claim number 9-1) in the amount of $2,594.43 in connection with the portion of the Real Property located in Chester County.  The Delaware County Tax Claim Bureau filed two proofs of claim against the EGC Debtor (claim number 18-1) in the amount of $218,474.82 and claim number 19-1 in the amount of $44,363.50 in connection with the portion of the Real Property located in Delaware County.

3.1.3   Payment of Allowed Secured Property Tax Liens. The Allowed Class 1A Secured Property Tax Liens plus accrued interest at the applicable statutory rate shall be paid on the Effective Date.

3.1.4   Retention of Liens.   Each holder of an Allowed Class 1A Secured Property Tax Lien shall retain its statutory Lien in the same priority, extent and validity as existed on the Petition Date against the Real Property until its respective Allowed Class 1A

Secured Property Tax Lien is paid.

3.1.5    <u>Deficiency Claim</u>.  The Secured Property Tax Liens are treated as fully secured claims and therefore they hold no Deficiency Claim.

3.1.6    <u>Extinguishment of Lien</u>.    Upon payment of the Allowed Secured Property Tax Liens as provided herein, the respective Lien of each holder shall be extinguished and shall effect a full and final satisfaction of such claim such that neither the Debtors, nor the Reorganized Debtors shall have any liability on account of such Claim.

3.2    **Class 1B.  <u>Secured Claim of PNC Bank</u>**.  Class 1B is impaired.  The treatment and consideration to be received by PNC Bank on account of its Allowed Secured Claim shall be in full settlement, satisfaction, release and discharge of all of its respective claims and liens.

3.2.1.    <u>Allowed Secured Claim of PNC Bank</u>.    By virtue of a series of transactions executed between the Debtors as co-borrowers and PNC Bank between 1997 and 2005, each of the Debtors are obligated to PNC Bank for amounts due pursuant to: (a) a note in the original principal amount of $2.2 million (the "2.2 Million Note"); (b) a line of credit with a principal balance of $500,000 (the "Line of Credit"); (c) a note in the original principal amount of $100,000 (the "$100,000 Note"); (d) an ISDA Master Agreement (the "Swap Agreement"); (e) costs and reasonable legal expenses incurred as of the Petition Date (the "PNC Pre-Petition Fees") and (f) the Complaint in Confession of Judgment filed by PNC Bank in the amount of $2,732,334.69, on or about January 18, 2013 against Edgmont Golf Club, Inc. and Edgmont Country Club ("Defendants") in an action styled *PNC Bank v. Edgmont Golf Club, Inc. and Edgmont Country Club,* Delaware County Common Pleas Court Docket No. 2013-522 (the "Judgment by Confession" collectively with the $2.2 Million Note, the Line of Credit, the $100,00 Note, the Swap Agreement, and the PNC Pre-Petition Fees, the "Existing Obligations")).  On March 13, 2013, the Debtors filed a Petition to Open/Strike the Judgment by Confession and after hearing, on October 23, 2013, the Honorable G. Michael Green issued an Order denying the Petition to Open/Strike the Judgment by Confession (the "State Court Order").  On December 19, 2013, Defendants filed a Notice of Appeal in the Delaware County Court of Common Pleas, appealing the State Court Order to the Superior Court of Pennsylvania, the appeal is styled *PNC v. Edgmont Golf Club, Inc. and Edgmont Country Club,* Superior Court Docket No. 114 EDA 2014 (the "Appeal").  On February 10, 2014, PNC Bank filed a motion to quash the appeal with the Superior Court on the basis that Debtors had not requested relief from the automatic stay in the bankruptcy proceeding before filing their notice of appeal.  The Debtors filed a motion to modify the automatic stay *nunc pro tunc,* effective as of December 18, 2013 (the "Relief from Stay Motion"), in order to cure the defect raised by PNC Bank and to allow the appeal of the State Court Order to proceed to a final adjudication.  By Order of the Bankruptcy Court dated February 21, 2014, the Appeal is stayed pending further Order of the Bankruptcy Court.

3.2.2  <u>Amount of the Allowed Secured Claim of PNC Bank</u>.  The Debtor asserts that the amount due PNC Bank as of the Petition Date on account of the Existing Obligations and the Confessed Judgment is as follows:

$2.2 Million Note                             $1,726,163.78

| | |
|---|---:|
| Interest as of Petition Date | 368.25 |
| Line of Credit | 500,000.00 |
| Interest as of Petition Date | 1,611.10 |
| $100,000 Note | 52,951.50 |
| Interest as of Petition Date | 25.13 |
| Swap Agreement | 151,689.02 |
| PNC Pre-Petition Fees | 34,462.45 |
| Total | $2,467,271.23 |

The above stated amount is subject to increase by (i) the amount of interest (at the contract rate) that accrued after the Petition Date less the amount of adequate protection payments paid by the Debtors to PNC Bank and (ii) reasonable fees and costs incurred after the Petition Date to the extent allowed under 11 U.S.C. §506(b).  To the extent that the Court determines that the PNC Bank Allowed Claim is different than the amount fixed herein, the amount fixed by the Court shall control under this Plan, unless otherwise agreed by PNC Bank and the Debtors.

      3.2.2    <u>Claims filed by PNC Bank</u>.  PNC Bank filed an identical secured proof of claim in the amount of $2,669,808.76 against each Debtor in these Chapter 11 Cases (docketed as claim no. 10-1 in the EGC Debtor case and claim no. 8 in the ECC Debtor case) which amount is higher than the amount the Debtor believes it owes PNC Bank.  Accordingly, the Debtors intend to object to these claims.  PNC Bank shall only be entitled to a single recovery on account of these secured claims.

      3.2.3.    <u>Post-Petition Payments to PNC Bank</u>.  Pursuant to the interim cash collateral orders, the Debtors paid adequate protection payments to PNC Bank on account of the PNC Bank Allowed Secured Claim.

      3.2.4.    <u>Payment of Allowed Secured Claim</u>. The balance of the Allowed Class 1B Secured Claim of PNC Bank less the adequate protection payments paid to PNC Bank plus accrued interest (at the contract rate) shall be paid on the Effective Date to PNC Bank.

      3.2.5    <u>Retention of Liens</u>.  PNC Bank shall retain its liens in the same priority, extent and validity as existed on the Petition Date in the Assets of EGC Debtor and the Assets of ECC Debtor until the PNC Bank Allowed Secured Claim is paid.

      3.2.6    <u>Deficiency Claim</u>.  The PNC Bank Allowed Secured Claim is treated as a fully secured claim and therefore PNC Bank holds no Deficiency Claim.

      3.2.7    <u>Extinguishment of Lien</u>.  Upon payment of the PNC Bank Allowed Secured Claim as provided herein, the Liens of PNC Bank shall be extinguished and shall effect a full and final satisfaction of such claim such that neither the Debtors, nor the Reorganized Debtors, shall have any liability on account of such Class 1B Claim.

    **3.3**    **Class 1C.  <u>Priority Non-Tax Claims</u>**.  Class 1C is not impaired.  Each holder of a Priority Non-Tax Claim, except as otherwise agreed by the holder of such claim, shall be paid in accordance with the priorities set forth in the Bankruptcy Code within thirty (30) days after  the Effective Date.  The Distributions to holders of Claims in Class 1C shall take into

account Distributions to be made by each Debtor on account of Allowed Priority Non-Tax Claims so that there shall be only a single recovery on account of these Claims

3.4 **Class 1D. General Unsecured Claims.** Class 1D is impaired. The treatment and consideration to be received by the holders of Allowed Unsecured Claims shall be in full settlement, satisfaction, release and discharge of all their respective claims and liens. Class 1D consists of all Allowed Claims not otherwise classified herein.

3.4.1 **Treatment of Allowed Unsecured Claims**. Holders of Allowed Class 1D Claims shall be paid one hundred (100%) percent of their Allowed Claims on the later date of thirty (30) days after the (i) Effective Date or (ii) the date on which the Claim becomes an Allowed Claim.

3.4.2 **General Provisions.** No interest or other similar post-petition charges will be paid on account of Class 1D Claims and no General Unsecured Claim shall be allowed to the extent that it is for post-petition interest or other similar post-petition charges. Notwithstanding the foregoing, any Unsecured Claim as to which insurance coverage exists and is paid shall not receive a distribution hereunder but, rather, shall be paid exclusively as provided under the applicable policy or policies of insurance and only to the extent of said insurance coverage. The Distributions to holders of Claims in Class 1D shall take into account Distributions to be made by each Debtor on account of such Claims so that there shall be only a single recovery on account of these Claims.

3.5 **Class 1E. Interest Holders.** Class 1E is not impaired. As of the Petition Date, Pam Mariani and the Trust each owned fifty (50%) percent of all the Interests in the EGC Debtor. As of the Effective Date, the Class 1E interests in the EGC Debtor shall remain equal to the Interests as of the Petition Date.

## Edgmont Country Club

3.6 **Class 2A. Secured Claim of PNC Bank.** Class 2A is impaired. The treatment and consideration to be received by PNC Bank on account of its Allowed Class 2A Secured Claim shall be in full settlement, satisfaction, release and discharge of its respective secured claims and liens.

3.6.1 Amount of PNC Bank Allowed Claim and Payment. The amount of the PNC Bank Class 2A Claim against the ECC Debtor shall equal the amount of the Allowed PNC Bank Class 1B Claim against the EGC Debtor; provided, however PNC Bank shall only be entitled to a single recovery on account of these two Claims. Therefore, upon payment of the PNC Bank Class 1B Claim by the EGC Debtor, the PNC Bank Class 2A Claim against the ECC Debtor shall be deemed paid in full and vice versa, if the PNC Bank Class 2A Claim should be paid by the ECC Debtor first.

3.6.2 Retention of Liens. PNC Bank shall retain its liens in the same priority, extent and validity as existed on the Petition Date in the Assets of EGC Debtor and the Assets of ECC Debtor until the PNC Bank Allowed Secured Claim is paid.

3.6.3   <u>Deficiency Claim</u>.  The PNC Bank Claim is treated as a fully secured claim and therefore there is no Deficiency Claim.

3.6.4   <u>Extinguishment of Lien</u>.  Upon payment of the PNC Bank Allowed Secured Claim as provided herein, the Lien of PNC Bank shall be extinguished and shall effect a full and final satisfaction of such claim such that neither the Debtors, nor the Reorganized Debtors shall have any liability on account of such Claim.

3.7   **Class 2B.  Priority Non-Tax Claims**.  Class 2B is not impaired.  Each holder of a Priority Non-Tax Claim, except as otherwise agreed by the holder of such claim, shall be paid in accordance with the priorities set forth in the Bankruptcy Code within thirty (30) days after  the Effective Date.  The Distributions to holders of Claims in Class 2B shall take into account Distributions to be made by each Debtor on account of Allowed Priority Non-Tax Claims so that there shall be only a single recovery on account of these Claims.

3.8   **Class 2C.  General Unsecured Claims.**  Class 2C is impaired.  The treatment and consideration to be received by the holders of Allowed Unsecured Claims shall be in full settlement, satisfaction, release and discharge of all their respective claims and liens. Class 2C consists of all Allowed Claims not otherwise classified herein.

3.8.1.   **Treatment of Allowed Unsecured Claims**.  Holders of Allowed Class 1D Claims shall be paid one hundred (100%) percent of their Allowed Claims on the later date of thirty (30) days after the (i) Effective Date or (ii) the date on which the Claim becomes an Allowed Claim.

3.8.2   **General Provisions.**   No interest or other similar post-petition charges will be paid on account of Class 2C Claims and no General Unsecured Claim shall be allowed to the extent that it is for post-petition interest or other similar post-petition charges. Notwithstanding the foregoing, any Unsecured Claim as to which insurance coverage exists and is paid shall not receive a distribution hereunder but, rather, shall be paid exclusively as provided under the applicable policy or policies of insurance and only to the extent of said insurance coverage.  The Distributions to holders of Claims in Class 2C shall take into account Distributions to be made by each Debtor on account of Allowed Unsecured Claims so that there shall be only a single recovery on account of these Claims.

3.9   **Class 2D.  Interest Holders.**  Class 2D is impaired.  The Class 2D interests in the ECC Debtor shall remain equal to the Interests as of the Petition Date.

## ARTICLE 4 – TREATMENT OF UNCLASSIFIED CLAIMS AND DIP LOAN

4.1   **Administrative Claims**.  All Administrative Claims shall be treated as follows:

4.1.1   <u>Time for Filing Administrative Claims</u>.  The holder of an Administrative Claim other than (i) a Fee Claim or (ii) a liability incurred and paid in the ordinary course of business by the Debtorss, must file with the Bankruptcy Court and serve on the Debtors and their counsel, a motion or request for the payment of such Administrative Claim within thirty

(30) days after the Effective Date.  Such motion or request must include, at minimum, (i) the name of the holder of the claim, (ii) the amount of the claim, and (iii) the basis of the claim. Furthermore, all persons and entities asserting Administrative Claims, which do not fall within Section 4.1 of the Plan, shall file a motion or request for the payment of such administrative claim within thirty (30) days of the Effective Date, or be forever barred from asserting any such Administrative Claim.  Failure to file a motion or request for payment timely and properly shall result in the Administrative Claim being forever barred and discharged.

4.1.2   <u>Time for Filing Fee Claims</u>.  Each Professional Person who holds or asserts an Administrative Claim that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court a final fee application within thirty (30) days after the Effective Date.  Failure to file a final fee application timely shall result in the Fee Claim being forever barred and discharged.

4.1.3   <u>Allowance of Administrative Claims</u>.  An Administrative Claim with respect to which notice is required and which has been properly filed pursuant to Section 4.1.1 of this Plan shall become an Allowed Administrative Claim if no objection is filed within thirty (30) days of the filing and service of notice of such Administrative Claim.  If an objection is filed within such thirty (30) day period, the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order.  An Administrative Claim that is a Fee Claim, and with respect to its fee application has been timely filed pursuant to Section 4.1.2 of the Plan, shall become an Allowed Administrative Claim only to the extent allowed by Final Order.

4.1.4   <u>Payment of Allowed Administrative Claim</u>.  Each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim upon the Effective Date, (ii) such other treatment as may be agreed upon in writing by the Debtors and such holder, or (iii) as may be otherwise ordered by the Court, provided that an Administrative Claim representing a liability incurred in the ordinary course of business by the Debtors may be paid in the ordinary course of business.

4.1.5   <u>Professional Fees Incurred After the Effective Date</u>.  Professional fees incurred by the Debtor after the Effective Date must be approved by the Debtor and, thereafter, can be paid without further Order of the Court.  Any dispute which may arise with regard to professional fees after the Effective Date shall be submitted to the Bankruptcy Court, which shall retain jurisdiction to settle these types of disputes.  In the event of such dispute, the Debtors shall pay that portion of the fees, if any, which is not in dispute, punctually.

4.1.6   <u>General Provisions</u>.  No post-petition interest or other similar post-petition charges will be paid on account of Administrative Claims.

4.2   **Treatment of Priority Tax Claims**.  Each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtors (i) the amount of such holder's Allowed Claim on the Effective Date; (ii) the amount of such holder's Allowed Claim, plus interest accrued at the applicable statutory rate, in equal monthly cash payments in accordance with the provisions of §1129(a)(9)(c) of the Bankruptcy Code or (iii) such other treatment as may be agreed upon in writing by the Debtors and such Creditor.

4.3    **No Liability for Certain Tax Claims**.  To the extent that any Claim asserted by a governmental taxing authority seeks recovery of a fine or penalty against the Debtors, that portion of such Claim, if allowed, which represents such fine or penalty, shall be treated as a General Unsecured Claim.

4.4    **Treatment of DIP Loan**.  Pam Mariani and the Trust, the two holders of Claims in connection with the DIP Loan, shall retain their Liens and Claims against the Debtors in the same priority, extent and validity as granted by the Final Order approving the DIP Loan until the DIP Loan is paid in full.  The maturity date of the DIP Loan is the earlier of (i) the Effective Date of any plan confirmed by the Debtors, (ii) closing on the sale of substantially all of the Debtors' assets, or (iii) March 31, 2015.  The reference to March 31, 2015 as the maturity date has been waived by the holders of Claims that comprise the DIP Loan.

## ARTICLE 5 - ACCEPTANCE OR REJECTION OF THE PLAN

5.1    **Impaired Classes of Claims and Interests Entitled to Vote:**  Claim and/or Interest holders in each Class identified as impaired in Article 2 of this Plan are entitled to vote as a class to accept or reject the Plan.

5.2    **Acceptance by an Impaired Class:**  In accordance with §1126(c) of the Bankruptcy Code and except as provided in §1126(e) of the Bankruptcy Code, a class of Claims entitled to vote to accept or reject the Plan shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such class that have timely and properly voted to accept or reject the Plan.

5.3    **Presumed Acceptances by Unimpaired Classes:**  Claims and/or Interest holders in each class identified as not impaired in Article 2 of this Plan are conclusively presumed, under §1126(f) of the Bankruptcy Code, to accept the Plan and the votes of such Claim holders will not be solicited.

5.4    **Confirmation Pursuant to §1129(b) of the Bankruptcy Code:**  To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Debtors will request confirmation of the Plan, as it may be modified from time to time, under §1129(b) of the Bankruptcy Code.  The Debtors reserves the right to alter, amend, modify, revoke, or withdraw the Plan or any Plan Exhibit or Schedule, including to amend or modify it to satisfy the requirements of §1129(b) of the Bankruptcy Code, if necessary.

## ARTICLE 6
## Provisions For Execution of The Plan

6.1    **Revesting of Assets**.  On the Effective Date, the EGC Debtor shall be vested with all of its respective interests and the Assets of EGC Debtor comprising its  Estate free and clear of all Claims, Liens, charges and other interests of Creditors other than as expressly set forth in the Plan and the ECC Debtor shall be vested with all of its respective interests and the

Assets of ECC Debtor comprising its Estate free and clear of all Claims, Liens, charges and other interests of Creditors other than as expressly set forth in the Plan. All claims or Causes of Action held by the Debtors may be prosecuted or enforced by the Debtors pursuant to 11 U.S.C. § 1123(b)(3).

6.2    **Post-Confirmation Operations of Country Club**. As of the Effective Date, (a) the ECC Debtor may continue to operate its business including, the golf course and country club and use, acquire, and dispose of property and (b) the EGC may operate its business and use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order. The ECC Debtor contemplates operating the country club until the closing under the Sale Agreement which may take a number of years after the Effective Date.

6.3    **Sale of Real Property**. The Sale Agreement between the EGC Debtor and Purchaser provides for the purchase and sale of the Real Property subject to certain conditions including approvals for the development of the Real Property (excluding the Retained Property). The Debtor will not sell the Retained Property to the Purchaser but will retain it for future development; provided, however, if the subdivision of the Retained Property from the Real Property has not been completed by the date of closing under the Sale Agreement, the Retained Property will be conveyed to Purchaser as part of the Real Property (subject to the terms and restrictions of the Sale Agreement) and the Retained Property will be conveyed back to the EGC Debtor after the subdivision of the Retained Property has been completed. The sale of the Real Property (excluding the Retained Property) to the Purchaser under the provisions of the Sale Agreement is the mechanism by which the Debtors are able to reorganize their affairs and to confirm this Plan under the provisions of the Bankruptcy Code. Funding from the Purchaser under the Sale Agreement will enable the Debtors to make the Distributions required under this Plan. The Purchase Price for the Real Property being sold (excluding the Retained Property) shall depend on the number of dwelling units for which Approvals (as defined in the Sale Agreement) have been obtained; provided, however, the minimum purchase price shall not be less than $15,700,000 unless the EGC Debtor exercises the Put (as defined in the Sale Agreement) in which case the Put Strike Price of $14,000,000 shall apply.

6.4    **Payment of Deposit**. One day following expiration of the Due Diligence Period, if Purchaser has not terminated the Sale Agreement, Purchaser shall deliver the sum of Six Million Dollars ($6,000,000.00) (the "Deposit") to Land Services USA, LLC ("Escrow Agent") pursuant to an escrow agreement mutually acceptable to the EGC Debtor, Purchaser and Escrow Agent. Upon the occurrence of the Confirmation Date, the Deposit shall be non-refundable except in the event of an uncured Seller's Default (as defined in the Sale Agreement). The Deposit shall be held in one or more interest bearing money market accounts; provided, however, that in lieu of a cash payment on account of the Deposit, Purchaser shall have the right to deliver to Escrow Agent an irrevocable letter of credit in a form substantially similar to that attached to the Sale Agreement or otherwise acceptable to the EGC Debtor, in the amount of the Deposit issued by M & T Bank or another bank with a net worth in excess of $10 billion whose deposits are insured by the FDIC, naming EGC Debtor as the beneficiary (the "Letter of Credit"). One day following the date the Confirmation Order becomes a Final Order, the Purchaser shall cause the Deposit, including any portion of the Deposit represented by a Letter of Credit, if any, to be

converted into immediately available funds and paid immediately to the EGC Debtor to be used by the EGC Debtor to fund distributions under this Plan, provided that such disbursement may include, at Purchaser's option, a direct disbursement from the Deposit to those creditors of EGC Debtor who hold liens against the Real Property (Classes 1A Secured Claims of Property Tax Liens, 1B Secured Claims of PNC Bank and 2A Secured Claims of PNC Bank), in satisfaction of such liens, to assure that the Mortgage (as defined in the Sale Agreement) is a perfected first lien against the Real Property. The Purchaser retains the right to replace the Letter of Credit with immediately available funds equal to the face amount of the Letter of Credit and, upon EGC Debtor's receipt of said funds it will return the Letter of Credit to the Purchaser. The Deposit paid to EGC Debtor shall be credited against the Purchase Price and will be secured by a first mortgage lien on the Real Property subject to the terms and conditions of the Sale Agreement. The EGC Debtor will utilize the balance of the Deposit to make the remaining payments required under the Plan to holders of Allowed Administrative Claims, Allowed Priority Tax Claims, the DIP Loan, Class 1C (Priority Non-Tax Claims against the EGC Debtor), Allowed Class 2B (Priority Non-Tax Claims against the ECC Debtor), Allowed Class 1D (General Unsecured Claims of the EGC Debtor), Allowed Class 2C (General Unsecured Claims of the ECC Debtor) and the balance to the holders of Class 1E (Interests in the EGC Debtor). The EGC Debtor's entry into the Sale Agreement, the incurrence of the indebtedness thereunder secured by a mortgage against the Real Property, the issuance of the mortgage in favor of the Purchaser, the delivery of the deeds for the Real Property to the Purchaser, and the making of the lease between the Purchaser and the EGC Debtor in connection with the Retained Property are all transfers required under the terms and conditions of the Sale Agreement are hereby authorized under this Plan, and the Confirmation Order shall so provide without the need for any further corporate action and without the need of any further approval by the Bankruptcy Court. The only conditions precedent to the funding of the Deposit are the expiration of the Due Diligence Period (which will occur prior to the Confirmation Hearing) without the Sale Agreement being terminated by the Purchaser and the entry of a Confirmation Order that becomes a Final Order.

      6.5 **Sale of Real Property is Free and Clear of Liens, Claims and Interests**. Except as to the Purchaser's liability to pay the Purchase Price (as defined in the Sale Agreement) to the EGC Debtor, pursuant to 11 U.S.C. §§ 363 and 1123, the sale and transfer of the Real Property to the Purchaser upon the closing will be a legal, valid, and effective transfer of the Real Property (excluding the Retained Property) and vest the Purchaser with absolute right and title in and to the Real Property (excluding the Retained Property) free and clear of mortgages, security interests, conditional sale or other title retention agreements, claims of governmental entities (including but not limited to claims for taxes, real estate taxes, interest and/or penalties), claims arising under bulk sales or similar laws, claims of the EGC Debtor's employees or employee benefit plans (including but not limited to claims for wages, salaries, commissions, vacation, severance, health or life insurance, or other employee benefits), charges, mechanics liens, pledges, liens, claims, judgments, demands, easements, charges, encumbrances, defects, options, restrictions of all kinds, any claims under any contract or statute, or in tort, that the Purchaser is the successor in interest to the business of the Debtors as it relates to the Real Property (excluding the Retained Property), any post-petition administrative claim in the Debtors' bankruptcy cases, and any other interest (including, without limitation, liens, claims, encumbrances, causes of action and interests (i) that purport to give to any party a right or option to effect any forfeiture, modification, or

termination of the EGC Debtor's or Purchaser's interest in the Real Property (excluding the Retained Property), (ii) in respect of taxes, or (iii) which arise as a result of any employee benefit plan), whether matured, unmatured, contingent, liquidated or unliquidated (collectively, the "Liens and Interests") with all such Liens and Interests released, terminated and discharged as to the Real Property (excluding the Retained Property).  Upon the closing, holders of such Liens and Interests shall be permanently enjoined from asserting such Liens and Interests against the Real Property (excluding the Retained Property) and the Purchaser.  All Liens and Interests shall attach to the proceeds of sale with the same extent, validity, and priority as they had with respect to the Real Property (excluding the Retained Property) prior to closing and shall be paid as provided by this Plan.

6.6    **Disbursements and Investment of Funds**.  All distributions under this Plan shall be made by the Disbursing Agent.  The Disbursing Agent may hold or invest funds in one or more accounts, provided that all investments shall be made in accordance with § 345(a) of the Bankruptcy Code.

6.7    **Final Decree.**  After consummation of the Plan and in the sole discretion of the Debtors, the Debtors shall file a motion to close these Chapter 11 Cases and request that a final decree be issued.

6.8    **Continued Existence of the Debtors**.  The EGC Debtor and the ECC Debtor will continue to exist after the Effective Date as corporations, with all the powers under applicable law in the jurisdiction in which each Debtor was formed and pursuant to their respective articles of formation and bylaws in effect prior to the Effective Date, except to the extent such articles of formation and bylaws are amended.

6.9    **Corporate Action**.  Each of the matters provided for under the Plan involving the structure of the Debtors or action to be taken by or required of the Debtors will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and will be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by the board of directors of the EGC Debtor or the ECC Debtor.

6.10    **Effectuating Documents and Further Transactions**.  The existing officers and directors of the EGC Debtor and the ECC Debtor, shall be authorized, to execute, deliver, file, or record such contracts, instruments, settlement agreements, releases, and other agreements or documents and to take or direct such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms, conditions and provisions of this Plan and the Sale Agreement.  The secretary or any assistant secretary of each Debtor, as applicable, shall be authorized to attest any of the foregoing actions.

6.11    **Post-Confirmation Officers and Directors; Compensation**.  The Debtors shall compensate Pam Mariani, the General Manager and a director of the Debtors, after the Effective Date in the same amount as during the course of these Chapter 11 Cases as follows:

(a) wages in the gross weekly amount of $650.00[1] and (b) provide her with the normal and customary benefits provided to all management employees, which includes health insurance coverage. The Debtors shall also compensate Peter Mariani, the Chief Financial Officer of the Debtors in the same amount as during the course of these Chapter 11 Cases as follows: (a) provide Peter Mariani with the normal and customary benefits provided to all management employees, which includes health insurance coverage. John Mariani who serves as a director of the Debtors with Pam Mariani will not be compensated. The Debtors reserve the right to modify the compensation of these individuals as they deem appropriate in their sole business judgment. The operations of the Debtors have been conducted and will continue to be conducted by Pam Mariani and Peter Mariani who have the direct responsibility for the planning, organization, direction and control of all levels of management and all phases of the business operations. The Debtors reserve the right to change their officers and/or directors as they deem appropriate.

6.12    **Preservation of Insurance**.    Neither the Confirmation Order nor the occurrence of the Effective Date of the Plan shall diminish or impair (a) the enforceability of insurance policies that may cover Claims against the Debtors or any other person or entity, or (b) the continuation of existing insurance programs in effect. On the Effective Date, all insurance obligations, coverage, benefits and policies shall be deemed preserved, assumed and shall vest in the Debtors.

6.13    **Transactions under the Sale Agreement are Transfers Under the Plan.** The conveyance of the Real Property to the Purchaser, the delivery of the deeds for the Real Property to the Purchaser (which may include the Retained Property if the subdivision of the Retained Property has not been completed at the time of closing), the issuance of the mortgage in favor of the Purchaser, the making of the lease between the Purchaser and the EGC Debtor in connection with the Retained Property and the conveyance of the Retained Property from the Purchaser back to the EGC Debtor (after subdivision approval of the Retained Property from the Real Property has been obtained) are all transfers required by the provisions of the Sale Agreement, this Plan and the Confirmation Order and shall constitute "transfers under a plan" within the purview of §1146(a) of the Bankruptcy Code and shall not be subject to transfer, stamp or similar taxes in accordance with such section.

6.14    **Exemption from Transfer Taxes.** Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of securities under this Plan and the Sale Agreement, the creation of the mortgage, or other security interests, the making or assignment of the lease, or the making or delivery of the deeds or other instrument of transfer under, in furtherance of or in connection with, this Plan, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax imposed by any federal, state or local authority, including, without limitation, any tax imposed by the (a) Commonwealth of Pennsylvania, (b) Chester County, (c) Delaware County, (d) Willistown Township, and (e) Edgemont Township in connection with the Real Property and Retained Property owned by the EGC Debtor. In order to effectuate the provisions of Section 1146(a) of the Bankruptcy Code, the Confirmation Order shall order and direct, to the extent necessary, the applicable Recorder of Deeds of Chester County and Delaware County to promptly record any deed(s) to the Real Property and

---

[1] The wages earned by Pam Mariani during the pendency of these Chapter 11 Cases have been accrued and will be paid to her on the Effective Date.

Retained Property owned by the EGC Debtor which is being sold to the Purchaser pursuant to the provisions of this Plan.

6.15  **Execution of Documents Extinguishing Liens:**  The Reorganized Debtors shall have the authority and power to execute documents extinguishing Liens on behalf of those creditors whose Liens have been and will be extinguished pursuant to this Plan.

# ARTICLE 7

## Provisions Governing Distributions, General Provisions and Conditions Precedent

7.1  **Distributions**.  Distributions pursuant to this Plan shall be made by the Disbursing Agent as provided herein and shall be made, unless otherwise provided herein, on the Effective Date, or as soon as practicable thereafter, or as may be otherwise ordered by the Court.

7.1.1  Delivery of Distributions.  Distributions and deliveries to Holders of Allowed Claims will be made at the addresses set forth on the proofs of claim filed (with respect to such Claims, or as set forth in the Debtors' Schedules, or at the Claim Holder's last known address).  If any Claim Holder's Distribution is returned as undeliverable, no further Distributions to the Holder will be made unless and until the Disbursing Agent is notified of the Holder's then current address, at which time all missed Distributions will be made to the Holder without interest.   All claims for undeliverable distributions must be made to the Disbursing Agent within sixty (60) days after the respective Distribution was made.

7.1.2  Means of Cash Payment.  Cash payments made pursuant to the Plan will be in United States funds, by check drawn on a domestic bank or by wire transfer from a domestic bank.  All cash distributions will be made by the Disbursing Agent.

7.1.3  Time Bar to Cash Payments. Checks issued by the Disbursing Agent with respect to Allowed Claims will be null and void if not cashed within sixty (60) days of the date of their issuance.  Requests for reissuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim with respect to which the check originally was issued.  Any claim with respect to such a voided check must be made on or before sixty (60) days after the date of issuance of the check.  After the date, all claims with respect to void checks will be discharged and forever barred, and the cash, including interest earned, if any, shall be revested in the Reorganized Debtors.

7.1.4  Setoffs.  The Debtors may, but will not be required to, set off against any Claim and any payments to be made pursuant to the Plan with respect to a Claim (and may withhold any payment or distribution to be made pursuant to the Plan in respect of such Claim until such setoff rights are effectuated or resolved between the parties with respect to such Claim), any receivable, claim, and/or Cause of Action of every type and any nature whatsoever (collectively, the "Receivable") that the Debtors and/or their Estates may have against the Claim and/or the Creditor holding the Claim, but neither the failure to do so nor the allowance of any Claim, whether pursuant to the Plan or otherwise, will constitute a waiver or release by the Debtors and/or their Estates of any Receivable that the Debtors or their Estates may

possess against such Claim and/or the Creditor holding the Claim.

7.1.5   <u>De Minimis Distributions</u>.  No cash payment of less than twenty-five dollars ($25.00) will be made by the Disbursing Agent to any Creditor unless a request is made in writing to the Debtors to make such a payment.

7.1.6   <u>Fractional Securities; Fractional Dollars</u>.  Notwithstanding any other provision of the Plan, payments of fractions of shares will not be made and shall be rounded (up or down) to the nearest whole number, with fractions equal to or less than ½ being rounded down.  Notwithstanding any other provision of the Plan, neither the Debtors nor the Disbursing Agent shall be required to make distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

7.1.7   <u>Saturday, Sunday or Legal Holiday</u>.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but will be deemed to have been completed as of the required date.

7.1.8.   <u>Subordination Rights</u>.  Any distributions under the Plan shall be received and retained free of and from any obligations to hold or transfer the same to any other person, and shall not be subject to levy, garnishment, attachment or other legal process by any person by reason of claimed contractual subordination rights, which rights shall be waived and this provision shall constitute an injunction enjoining any person from enforcing or attempting to enforce any contractual, legal or equitable subordination rights to distributions under the Plan, in each case other than as provided in the Plan.

7.2   **Notices.**  Any notice described in or required by the terms of this Plan or the Code and Rules shall be in writing and, if by facsimile or personal service, shall be deemed to have been given when actually received, or if by mail, deemed given three (3) days after the date when mailed by certified mail, postage prepaid, return receipt requested, and one (1) business day, if sent by a nationally recognized overnight courier service, and addressed as follows:

(a)   If to the Debtors, addressed to:

Pam Mariani, Director & General Manager
312 Devon Lane
Hershey's Mill
West Chester, PA 19380
Email:  pam.mariani@edgmont.com

John Mariani, Esquire, Director
Shutts & Bowen LLP
525 Okeechobee Boulevard
Suite 1100
West Palm Beach, Florida 33401
Email:  jmariani@shutts.com

Peter Mariani, CFO
Edgmont Golf Club, Inc.
5180 West Chester Pike
P.O. BOX 207
Edgemont, PA 19028
Email:  peter.mariani@edgmont.com

    (b)    With a copy to Counsel:

Maschmeyer Karalis P.C.
Attention:  Aris J. Karalis, Esquire
1900 Spruce Street
Philadelphia, PA 19103
Phone: (215) 546-4500

7.3    **Default.**  No default shall be declared under this Plan unless any payment due under the Plan shall not have been made or deemed made within thirty (30) days after written notice of the default to the Debtors and counsel for the Debtors of failure to make payment when due under the Plan.  The Reorganized Debtors shall have thirty (30) days after receipt of written notice of any default under the Plan in which to cure such default.

7.4    **No Interest or Attorneys' Fees.**  Except as expressly stated in the Plan, or as allowed by the Bankruptcy Court, no interest, penalty or late charge arising after the Petition Date, and no award or reimbursement of attorneys' fees or related expenses on disbursements, shall be allowed on or in connection with any Claim.

7.5    **Cramdown Provision and Confirmation Request.**  In the event that sufficient votes to confirm this Plan are not received, the Debtors request confirmation of the Plan pursuant to the provisions of § 1129(b) of the Bankruptcy Code.  Otherwise, the Debtors request confirmation of this Plan pursuant to the provisions of § 1129(a) of the Bankruptcy Code.

7.6    **Conditions Precedent to Confirmation:**  The following are conditions precedent to confirmation of the Plan:

7.6.1    The Order approving the Disclosure Statement with respect to the Plan shall be in a form and substance acceptable to the Debtors.

7.6.2    The Due Diligence Period under the Sale Agreement shall have expired.

25

7.6.3    The Confirmation Order shall be in a form and substance acceptable to the Debtors.

7.7    **Conditions Precedent to the Occurrence of the Effective Date:**    The following are conditions precedent to the occurrence of the Effective Date:

7.7.1    The Confirmation Order shall have become a Final Order and shall not be subject to any stay or injunction;

7.7.2    The Purchaser shall have paid the Deposit to the EGC Debtor so that the EGC Debtor may make the distributions under the Plan.

7.8    **Waiver of Conditions to Occurrence of Effective Date or Confirmation.** The Debtors may waive the conditions set forth in Sections 7.6 and/or 7.7 of the Plan without any notice to parties in interest or the Bankruptcy Court and without hearing. The failure to satisfy or waive any condition to Confirmation or the Effective Date may be asserted by the Debtors in their sole discretion, regardless of the circumstances giving rise to the failure of such condition to be satisfied. Failure of the Debtors, in their sole discretion, to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right which may be asserted at any time.

## ARTICLE 8
## Executory Contracts

8.1    **Assumed Executory Contracts and Unexpired Leases**.    Each executory contract and unexpired lease identified on the attached Exhibit 8.1 and all policies of insurance, as amended, extended and/or renewed shall be deemed automatically assumed in accordance with the provisions and requirements of §§ 365 and 1123 of the Bankruptcy Code as of the Effective Date. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions pursuant to §§ 365 and 1123 of the Bankruptcy Code. Each executory contract and unexpired lease assumed pursuant to this Section 8.1 shall vest in and be fully enforceable by the Debtors in accordance with its terms, except as modified by (a) any written agreement between the Debtors and the respective counterparty, (b) the provisions of this Plan, or (c) any order of the Bankruptcy Court authorizing or providing for its assumption. All written agreements between a Debtor and each respective counterparty that modify any executory contract or unexpired lease being assumed pursuant to this Section 8.1 shall be filed with the Court on or before the Confirmation Hearing. The Debtors reserve the right to file a motion on or before the Confirmation Date to assume or reject any executory contract or unexpired lease.

8.2    **Rejected Executory Contracts and Unexpired Leases**.    Except with respect to (i) executory contracts and unexpired leases assumed as provided by Section 8.1 of this Plan and (ii) executory contracts and unexpired leases that have been previously rejected by order of the Bankruptcy Court, or are the subject of a motion to reject filed on or before the Confirmation Date, all other executory contracts and unexpired leases shall be deemed automatically rejected as of the Confirmation Date. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections contemplated herein, pursuant to

§§ 365 and 1123 of the Bankruptcy Code.  The Debtors reserve the right to (a) file a motion on or before the Confirmation Date to reject any executory contract and/or unexpired lease and (b) modify or supplement Exhibit 8.1 at any time prior to the Confirmation Date.  Any counterparty to a rejected executory contract must be able to specifically identify items covered by any rejected executory contract as a condition precedent to the recovery of any such item and the removal of such item from the possession of the Debtors (or the Debtor, as the case may be).

       8.3       **Payments Related to Assumption of Executory Contracts or Unexpired Leases**.  The provisions of each executory contract and/or each unexpired lease to be assumed under the Plan which are or may be in default shall be satisfied in a manner to be agreed upon by the applicable Debtor and counterparty.  In the event of a dispute regarding (a) the nature or the amount of any cure payment, (b) the ability of a Debtor to provide "adequate assurance of future performance" (within the meaning of § 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, these matters shall be determined by the Bankruptcy Court.

       8.4       **Rejection Damages Bar Date**.  If the rejection by a Debtor (pursuant to the Plan or otherwise) of any executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the applicable Debtor, or such entities' Assets, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtor within thirty (30) days after the earlier of (a) notice of the Confirmation Order, or (b) other notice or order that the executory contract and unexpired lease has been rejected; provided, however, that the foregoing requirement to file a proof of claim shall not be applicable to any such Claim that was previously allowed by Final Order of the Bankruptcy Court.

## ARTICLE 9
## Causes of Action

       9.1       **Retention, Enforcement and Waiver of Claims.**  Pursuant to § 1123(b)(3) of the Bankruptcy Code, the Debtors shall retain and, shall have all requisite standing under the law, to initiate, continue or enforce any and all claims (both pre and post-petition) of the Debtors and/or the Debtors in Possession, including Causes of Action; provided, however, all Avoidance Actions shall be extinguished upon the completion of Distributions on account of Class 1D and Class 2C Claims.  All proceeds collected shall be used by the Debtors for their operations.

       9.2       **Powers**. The Debtors shall have the right to settle, compromise, sell, assign, terminate, release, discontinue or abandon any Cause of Action from time to time in their sole discretion.

## ARTICLE 10
## Provisions for Resolving and Treating Disputed Claims

       10.1       **Objections to Claims; Prosecution of Disputed Claims**.  Any Debtor may object to the allowance of Claims filed with the Court and all objections to the allowance of

Claims shall be litigated to Final Order or compromised and settled, subject to approval of the Bankruptcy Court after notice only to the applicable Debtor, the holder of such Claim, and parties requesting notices in the case pursuant to applicable Bankruptcy Rules, and a hearing. Failure to object to any Claim for purposes of voting on the Plan shall not be deemed a waiver of the right to object to such Claim at any later date.

10.2    **Late Filed Claims.**  No objection shall be filed with respect to any proof of claim filed after the Bar Date, and the holder of any such late filed proof of claim shall receive no distribution under the Plan, except as specifically ordered by the Bankruptcy Court following a motion filed by such Claimant, after notice to the applicable Debtor, counsel for the Debtor, and such parties as the Court may direct, and a motion and hearing thereon.  Any such motion shall be filed on or before the Effective Date or the holder of such Claims shall be forever barred and all such Claims shall be discharged.  Nothing herein shall constitute a waiver by any Debtor of any counterclaims, setoffs, or of any defenses with respect to such late filed proofs of claim, including defenses as to the timeliness of the filing of such proofs of claim.

10.3    **No Distributions Pending Allowance**.  No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order and the Disputed Claim becomes an Allowed Claim.

10.4    **Reserve for Disputed Unsecured Claims**.  On or after the Effective Date, the applicable Debtor shall hold in the Disputed Unsecured Claim Reserve, cash in an aggregate amount sufficient to pay each holder of a Disputed Unsecured Claim at the time distributions are made, pursuant to the Plan, the amount of cash such holder would have been entitled to receive if such claim had been an Allowed Claim on the Effective Date.  Cash withheld and reserved shall be held until a determination is made on the allowance or disallowance of the Disputed Unsecured Claim.  If the final determination of the Disputed Unsecured Claim results in the Claim being allowed, its holder will be paid from the Disputed Unsecured Claim Reserve based on the amount of its Claim that is allowed.  If the final determination results in the Disputed Unsecured Claim being disallowed, the cash reserved will be retained by the applicable Debtor.  If practicable, the Debtors may invest cash in the Disputed Unsecured Claim Reserve in a manner that will yield a reasonable net return, taking into account the safety of the investment.  Nothing herein shall be deemed to entitle the holder of a Disputed Claim to post-petition interest on such Claim.

10.5    **Estimation Period**.  The Debtors may, at any time after the Effective Date, request that the Bankruptcy Court estimate any unliquidated, contingent or Disputed Claim pursuant to §502(c) of the Bankruptcy Code, regardless of whether the Claim has previously been objected to.  In the event that the Bankruptcy Court estimates any unliquidated, contingent or Disputed Claim, the estimated amount may constitute a maximum limitation on such Claim, as determined by the Bankruptcy Court.  Notwithstanding this, the Debtors may elect to pursue any supplemental proceedings to object to the allowance and payment of such Claim.  All of the aforementioned Claims objection and estimation procedures are cumulative and not exclusive of one another.

10.6    **Distributions After Allowance**.  Payments and distributions to each holder of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, will be made in accordance with the provisions of the Plan that governs distributions to such Claimants.

10.7    **Objection Deadline.**  As soon as is practicable, but in no event later than thirty (30) days after the Effective Date (subject to being extended by the Bankruptcy Court upon motion of the Reorganized Debtors), objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each Claim to which objections are made.

## ARTICLE 11
## Retention of Jurisdiction

11.1    Pursuant to §§ 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, these Chapter 11 Cases and the Plan, including, among others, the following matters:

(a)    to hear and determine pending motions for (i) the assumption or rejection or (ii) the assumption and assignment of executory contracts or unexpired leases to which any Debtor is a party or with respect to which any Debtor may be liable, and to hear and determine the allowance of Claims resulting therefrom, including the amount of any cure payment, if any, required to be paid;

(b)    to adjudicate any and all adversary proceedings, applications and contested matters that may be commenced or maintained, pursuant to these Chapter 11 Cases or the Plan, proceedings to adjudicate the allowance of Disputed Claims and Disputed Interests, and all controversies and issues arising from or relating to any of the foregoing;

(c)    to adjudicate any and all disputes arising from or relating to the distribution or retention of any consideration under the Plan;

(d)    to ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished as provided herein;

(e)    to hear and determine any and all objections to the allowance of Claims and Interests and the estimation of Claims, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and to allow or disallow any Claim or Interest, in whole or in part;

(f)    to enter and implement such orders as may be appropriate if the Confirmation Order is, for any reason, stayed, revoked, modified or vacated;

(g)    to issue orders in aid of execution, implementation or consummation of the Plan;

(h)    to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

      (i)    to hear and determine all applications for compensation and reimbursement of Fee Claims under the Plan or under §§ 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

      (j)    to determine requests for the payment of Claims entitled to priority under § 507(a)(2) of the Bankruptcy Code, including compensation of and reimbursement of expenses of parties entitled thereto;

      (k)    to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, and the Sale Agreement including disputes arising under agreements, documents or instruments executed in connection with this Plan;

      (l)    to hear and determine all suits or adversary proceedings to recover assets of the Debtors and property of their Estates, wherever located;

      (m)    to hear and determine matters concerning state, local and federal taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

      (n)    to hear any other matter not inconsistent with the Bankruptcy Code;

      (o)    to hear and determine all disputes relating to any liability arising out of the termination of employment or the termination of any employee benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

      (p)    to enter a final decree closing these Chapter 11 Cases; and

      (q)    to enforce all orders previously entered by the Bankruptcy Court.

Unless otherwise specifically provided herein or in a prior order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims, Interests and Retained Actions.

### ARTICLE 12
### Miscellaneous

12.1   **Choice of Law.**  Except to the extent superseded by the Bankruptcy Code or other federal law, the rights, duties and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania without regard to the choice of law rules thereof.

12.2   **Payment of Statutory Fees**.  All fees payable pursuant to § 1930 of Title 28 of the United States Code, shall continue to be paid pursuant to the provisions of such section.

12.3   **Discharge of Debtors**.  Pursuant to § 1141 of the Bankruptcy Code, the distributions and rights that are provided in this Plan shall be in exchange for and in complete

satisfaction, discharge, and release, effective as of the Confirmation Date (but subject to the occurrence of the Effective Date), of all Claims and Causes of Action, of any nature whatsoever, whether known or unknown, including any interest accrued on such Claims from and after the Petition Date, and Interests in the Debtors, their Assets, and the Debtors' Estates. Except as otherwise provided in this Plan and § 1141 of the Bankruptcy Code, on the Effective Date (i) all Claims against the Debtors will be satisfied, discharged and released in full and (ii) all persons shall be precluded from asserting against the Debtors, the Estates, their successors, or their Assets, any other or further Claims based upon any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date. Such discharge does not impair obligations created under this Plan.

12.4   **Discharge of Claims; Injunction**.  The rights afforded in this Plan and the payments and distributions to be made under the Plan shall be in complete exchange for, and in full satisfaction, discharge and release of, all existing debts and Claims of any kind, nature or description whatsoever against the Debtors, the Estates or any of their Assets, and upon the Effective Date, all existing Claims against the Debtors, the Estates and all of the Assets of EGC Debtor and the Assets of ECC Debtor will be, and be deemed to be, exchanged, satisfied, discharged and released in full; and all holders of Claims shall be precluded and enjoined from asserting against the Debtors, the Estates or their successors or their respective Assets, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature, whether or not the holder filed a proof of claim.

12.5   **Effect of Confirmation Order**.  Notwithstanding any contrary provision in § 1141 of the Bankruptcy Code, the Confirmation Order shall not be operative until the Effective Date and none of the occurrences described in § 1141 shall occur prior to such date.  Except as provided in §1141(d) of the Bankruptcy Code, the provisions of the Plan and the Confirmation Order shall bind the Debtors and all holders of Claims and Interests and will be a judicial determination of discharge of the Debtors from all debts that arose before the Confirmation Date and any liability on a Claim or Interest that is determined under § 502 of the Bankruptcy Code as if such Claim or Interest had arisen before the Effective Date, whether or not a proof of claim or interest based on any such debt or liability is filed under § 501 of the Bankruptcy Code and whether or not a Claim or Interest based on such debt or liability is allowed under § 502 of the Bankruptcy Code and whether or not such holder is impaired under the Plan and whether or not such holder has accepted the Plan, and shall terminate all rights, Interests and Claims of such holder, except as provided in the Plan.

12.6   **No Admissions or Waivers**.  Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission or waiver by the Debtors with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

12.7   **Severability**.   Should any provision in this Plan be determined to be unenforceable, that determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

12.8   **Binding Effect**.  On the Effective Date, the provisions of this Plan including all Exhibits attached hereto, shall be binding upon the Debtors, all Claimants and Interest holders

31

of the Debtors, all persons named or referred to in this Plan, and to the fullest extent permitted under the Bankruptcy Code and other applicable law, all other entities who are affected in any manner by the Plan and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors.

12.9    **Withholding and Reporting Requirements**.  In connection with the Plan and all instruments issued and distributions made pursuant to the Plan, the Debtors will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions made pursuant to the Plan will be subject to any such withholding and reporting requirements.

12.10    **Automatic Stay**.  The automatic stay of § 362 of the Code shall remain in effect until the Effective Date.

12.11    **Modification and Amendments**.  The Debtors may alter, amend, or modify the Plan or any Exhibits thereto, under § 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing.  After the Confirmation Date and prior to substantial consummation of the Plan as defined in § 1101(2) of the Bankruptcy Code, the Debtors may, under § 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan.  In the event that the Purchaser elects to not pay the Deposit to the EGC Debtor and proceed with the purchase of the Real Property pursuant to the provisions of the Sale Agreement, the Debtors reserve the right to modify this Plan to replace the Purchaser and the Sale Agreement.

12.12    **Right to Revoke or Withdraw**.  The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Effective Date.

12.13    **Effect of Withdrawal, Revocation, or Non-Consummation**.  If the Debtors revoke or withdraw the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, then the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), the assumption or rejection of executory contracts or unexpired leases effected by the Plan and any document or agreement executed pursuant to the Plan, shall be null and void.  In such event, nothing contained herein, and no acts taken in preparation for consummation of the Plan, shall be deemed to constitute a waiver or release of any Claims by or against or Interests in the Debtors or any other person, to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors, or to constitute an admission of any sort by the Debtors or any other person.

12.14    **Liability in Connection with Plan.**  Neither the Debtors or any of their respective attorneys, accountants, financial advisors, investment bankers or agents shall have, or shall they incur, any liability to any Creditor or person for any act or omission in connection with or arising out of their duties and participation in the Chapter 11 Cases, the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct, and all such persons shall be entitled to rely upon the advice of counsel

32

with respect to their duties and responsibilities under the Plan.  The foregoing shall not, however, affect the liability of the Debtors to any Creditor in connection with any Allowed Claim under the Plan; or shall the foregoing affect the liability of any party with respect to any act or omission that has occurred prior to the Petition Date.

12.15    **Exculpation**.    Neither, the Debtors or any of their officers, directors, shareholders, partners, employees, agents, members, professionals, counsel, financial advisors, investment bankers, or agents shall have, will have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, or arising out of these Chapter 11 Cases, the confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan except for willful misconduct or gross negligence.

12.16    **Remedy of Technical Defects:**    After the Effective Date, the Debtors may, with approval of the Bankruptcy Court, and so long as it does not materially and adversely affect the interests of any Claimant, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order confirming the Plan, in such manner as may be necessary to carry out the purposes and effect of the Plan.

12.17    **Surrender and Cancellation of Instruments:**    On the Effective Date, except as otherwise provided in the Plan, all promissory notes, instruments, securities and agreements evidencing a Claim shall be cancelled.  At the option of the Debtors, no payment hereunder shall be made to or on behalf of any holder of any Claim, unless and until such promissory note, instrument, security or agreement is surrendered or the unavailability thereof is reasonably established to the satisfaction of the Debtors and such holder of a Claim executes and delivers any documents necessary to release all encumbrances arising under any applicable security agreement or non-bankruptcy law and such other documents as the Debtors may reasonably request.  In accordance with §1143 of the Bankruptcy Code, any such holder of a Claim that fails to surrender or cause to be surrendered such promissory note, instrument, security or agreement or to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to the Debtors shall be deemed to have forfeited all rights, claims and interests and shall not participate in any payment hereunder (to the extent otherwise entitled).

**(signature page follows)**

**EDGMONT GOLF CLUB, INC.**

By:  /s/ *Phyllis Ann Mariani (Pam)*
        Name:  Phyllis Ann Mariani
                a/k/a Pam Mariani
        Title:   Director & General Manager

By:  /s/ *John Mariani*
        Name:  John Mariani, Esquire
        Title:   Director

**EDGMONT COUNTRY CLUB**

By:  /s/ *Phyllis Ann Mariani (Pam)*
        Name:  Phyllis Ann Mariani
                a/k/a Pam Mariani
        Title:   Director & General Manager

By:  /s/ *John Mariani*
        Name:  John Mariani, Esquire
        Title:   Director

**MASCHMEYER KARALIS P.C.**

By:  /s/ *Aris J. Karalis*
        ARIS J. KARALIS
        1900 Spruce Street
        Philadelphia, PA  19103
        215-546-4500
        Attorneys for the Debtor

## LIST OF EXHIBITS TO PLAN

Exhibit 8.1          Schedule of Executory Contracts and Unexpired Leases to be assumed.

(To be supplied prior to the hearing to consider approval of the Disclosure Statement)