## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re:** | : | **CHAPTER 11** |
| | : | |
| **EDGMONT GOLF CLUB, INC.** | : | **BANKRUPTCY NO. 13-19358(SR)** |
| | : | |
| **Debtor** | : | |
| | : | |
| **In re:** | : | **CHAPTER 11** |
| | : | |
| **EDGMONT COUNTRY CLUB** | : | **BANKRUPTCY NO. 13-19359(SR)** |
| | : | |
| **Debtor** | : | |
| | : | |

## ORDER CONFIRMING AMENDED PLAN
## OF REORGANIZATION DATED APRIL 7, 2015
## AS MODIFIED ON AUGUST 10, 2015

Edgmont Golf Club, Inc. (the "EGC Debtor") and Edgmont Country Club (the "ECC Debtor" and, together with the EGC Debtor, the "Debtors"), as Debtors and as debtors in possession having proposed the Amended Joint Plan of Reorganization, dated April 7, 2015 (the "Plan") (Doc. No. 195) in these jointly administered Chapter 11 Cases; the Plan having been modified as of August 10, 2015 (Doc. No. 242)[1]; the Amended Joint Disclosure Statement with respect to the Plan having been filed on April 7, 2015 (the "Disclosure Statement") (Doc. No. 196); the Debtors having provided notice of a hearing to approve the Disclosure Statement; the Bankruptcy Court having held a hearing on April 15, 2015 to determine the adequacy of the Disclosure Statement; the Bankruptcy Court having entered an Order dated April 15, 2015 (Doc. No. 202) (the "Approval Order") (1) approving the Disclosure Statement, (2) approving solicitation packages and procedures for distribution thereof, (3) approving forms of ballot and establishing voting procedures for distribution thereof, (4) scheduling the Confirmation Hearing

---

[1] Each capitalized term used but not otherwise defined herein has the meaning ascribed thereto in the Plan as modified on August 10, 2015.

and (5) establishing procedures for filing and prosecuting objections to the Plan and confirmation of the Plan; the Disclosure Statement having been transmitted to all creditors and equity security holders of the Debtors as directed by the Approval Order; and

The Debtors' Report of Plan Voting dated May 29, 2015 having been filed [Doc. No. 225], that states *inter alia* that (i) with respect to EGC Debtor, Classes 1A, 1B and 1D, which are impaired, voted to accept the Plan and Classes 1C and 1E which are not impaired, are deemed to have accepted the Plan. Therefore, all classes under the EGC Plan have accepted the Plan. The Debtors' Report of Plan Voting further states that with respect to the ECC Debtor, Classes 2A and 2C, which are impaired, voted to accept the Plan and Classes 2B and 2D which are not impaired are deemed to have accepted the Plan. Therefore, all classes under the ECC Plan have accepted the Plan; and

No objections to confirmation of the Plan having been filed; and

The Bankruptcy Court having entered an Order dated August 12, 2015 ~~Doc. No.~~

whereby it determined that the Plan as modified on August 10, 2015, does not adversely change the treatment of any creditor or the interest of any equity security holder who voted to accept the Plan and the Plan as modified is deemed accepted by all creditors and equity security holders who had previously accepted the Plan; and

The Bankruptcy Court having held the Confirmation Hearing on August 12, 2015; the Court having taken judicial notice of the entire record of the Debtors' Chapter 11 Cases; upon consideration of all the proceedings in these Chapter 11 Cases before the Bankruptcy Court; the arguments of counsel for the Debtors and all other evidence proffered or adduced, memoranda and objections filed in connection therewith, and arguments of counsel made at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor; and

2

The Court finding that the Plan complies with the requirements of 11 U.S.C. §§ 1122 and 1123, and the requirements set forth in 11 U.S.C. § 1129 having been satisfied,

**IT IS HEREBY, ORDERED, THAT:**

1.    The Plan is confirmed pursuant to 11 U.S.C. §1129(a).

2.    Any objections to confirmation of the Plan that have not been withdrawn prior to the entry of this Order are hereby overruled in their entirety, and any withdrawn objections are hereby deemed withdrawn with prejudice.

3.    As set forth in Section 6.1 of the Plan, all of the Assets of EGC Debtor and the Assets of the ECC Debtor and all of their respective interests therein, shall continue to vest after the Effective Date in their respective Estates.    These bankruptcy cases shall remain open and shall continue to be administered by the Bankruptcy Court and the Plan shall not be substantially consummated until such time as (i) the Debtors have concluded the closing under the Sale Agreement; (ii) the Debtors or Lender, as may be applicable, shall have consummated a Section 363 Sale in accordance with the terms of the Plan in the event the Sale Agreement is terminated (and the Loan shall have been repaid with the proceeds thereof); (iii) the Lender shall have consummated a Section 363 Sale in accordance with the terms of the Plan upon the occurrence of an Event of Default (as such term is defined in the Loan Agreement) under the Loan Documents (and the Loan shall have been repaid with the proceeds thereof); or (iv) the Debtors have, after the termination of the Sale Agreement, otherwise repaid the Loan.    Concurrent with the occurrence of any of the events set forth in subsections (i), (ii) or (iii) herein, the EGC Debtor shall be vested with the remaining proceeds (after repayment of the Loan) of the Assets of the EGC Debtor and the ECC Debtor will be vested with the remaining proceeds (after repayment of the Loan) of the Assets of ECC Debtor, in each case, free and clear of all Claims, Liens, charges

3

and other interests of Creditors other than as expressly set forth in the Plan.  Concurrent with the occurrence of any event set forth in subsection (iv) herein, the EGC Debtor shall be vested with the Assets of the EGC Debtor and the ECC Debtor will be vested with the Assets of ECC Debtor, in each case, free and clear of all Claims, Liens, charges and other interests of Creditors other than as expressly set forth in the Plan.

        4.      To enable the Debtors to make the Distributions and payments required under the Plan, the Debtors are hereby authorized to enter into and perform under the Sale Agreement and the Loan Documents.  The Loan obligations to Lender will be secured by a first priority mortgage lien on the Real Property.  The Reorganized Debtors entry into the Sale Agreement, the Loan Documents and the incurrence of the indebtedness thereunder, and the sale of the Debtors assets set forth in the Sale Agreement for the purchase price of $11,501,000 are hereby authorized without the need for any further corporate action and without the need of any further approval by the Bankruptcy Court.  The Loan is provided to enable the Debtors to make the Distributions and payments required under the Plan on the Effective Date and to continue operations until the closing under the Sale Agreement which is scheduled for February 29, 2016 (or, if applicable, a subsequent Section 363 Sale).  The purchase price under the Sale Agreement (or, if applicable, the proceeds of any Section 363 Sale) will be utilized, first, for the repayment of the Loan and, then, the balance will be paid to the Debtors. Subject to the provisions of the Loan Documents and the Sale Agreement, the Loan Documents and Sale Agreement are assignable to an affiliate of the Lender/Purchaser without any further approval of the court or any other party. In the event of a default under the Loan Documents, said default is deemed a post-petition event and as such, Lender has the immediate authority to exercise and pursue its rights and remedies, without regard to the automatic stay, before the Bankruptcy Court and/or any

appropriate non-bankruptcy forum; provided that the exercise of such remedies by the Lender shall not preclude the Debtors from filing a Section 363 Motion or pursuing the Section 363 Sale, to the extent a Triggering Event has occurred.  In addition to any rights and remedies under the Loan Documents, upon the occurrence of an Event of Default (as such term is defined in the Loan Agreement) under the Loan Documents, and if Debtors have not previously filed a Section 363 Motion in accordance with Section 6.3.1 of the Plan, the Lender may elect to proceed with a Section 363 Sale, and in such instance the Lender is authorized to file pleadings to effectuate the same.  The Debtors and Lender agree that in the Event of a Default (as such term is defined in the Loan Agreement) under the Loan Documents, the Bankruptcy Court's jurisdiction will be exclusive as to this Plan and the Section 363 Sale but not exclusive as to any remedies exercised before any other appropriate non-bankruptcy court.  The Debtors and Purchaser agree that in the event of a default by any Debtor under the Sale Agreement, the Bankruptcy Court's jurisdiction will be exclusive as to the Plan and the Section 363 Sale but not exclusive as to any remedies exercised before any other appropriate non-bankruptcy court.

5.    As set forth in Section 6.3.1 of the Plan, in the event that a Triggering Event occurs, the Debtors may file, but shall not be required to file, at any time after the Triggering Event, the Section 363 Motion requesting *inter alia* the scheduling of the Section 363 Sale.  In the event that a Seller Default Triggering Event occurs, the Debtors shall be required to file, within thirty (30) days after such election by Purchaser, the Section 363 Motion requesting *inter alia* the scheduling of the Section 363 Sale.  In the event that Debtors fail to timely file the Section 363 Motion if required to do so in accordance with this paragraph, the Lender may elect to proceed with a Section 363 Sale, and in such instance the Lender is authorized to file pleadings to effectuate the same.

5

6. As set forth in Section 6.3.2 of the Plan, the form of the agreement that will be utilized as the "stalking horse offer" in any Section 363 Sale shall be the existing Sale Agreement which will be modified so that (i) all references to the Loan, Due Diligence Period and Sewer Due Diligence Period are deleted, (ii) the purchase price thereunder shall be an amount no less than the full outstanding balance of the Loan, including without limitation, any and all accrued and unpaid interest thereon, as of the closing date of the Section 363 Sale, (iii) the purchase price shall be payable in immediately available funds at the time of closing, (iv) the agreement shall not contain any financing contingency, (v) the agreement shall require a deposit of an amount equal to five (5%) of the offer, which shall become non-refundable at the time the agreement is approved by the Bankruptcy Court, (vi) any offer submitted by the Lender may be in the form of a credit bid equal to the amount of the full outstanding balance of the Loan, including without limitation, any and all accrued and unpaid interest thereon, as of the closing date of the Section 363 Sale, and (vii) any offer submitted by the Lender shall require that, in the event Lender's stalking horse offer is the highest Stalking Horse Offer received by Debtors and utilized to commence the Section 363 Sale, then any overbid by a third party (and Lender is not the successful bidder), Lender shall be paid a breakup fee in an amount equal to $150,000 at the time of closing (collectively, the "Stalking Horse Offer"). The initial overbid, above the highest Stalking Horse Offer received by the Debtors and utilized to commence the Section 363 Sale, must be no less than $300,000 higher, and subsequent bids thereafter shall be at increments of no less than $50,000 per bid. The Lender shall be afforded thirty (30) days after the Triggering Event or Seller Default Triggering Event, as may be applicable to deliver to the Debtors a signed agreement representing its Stalking Horse Offer in accordance with Section 6.3.2 of the Plan and the Debtors may solicit from any other person a Stalking Horse Offer in accordance with Section

6

6.3.2 of the Plan. The Debtors will commence the Section 363 Sale with the highest Stalking Horse Offer they receive, including any subsequent Stalking Horse Offer received from Lender. In the event that there are no overbids, the Debtors shall move to confirm the sale pursuant to the Stalking Horse Offer that it accepted and proceed to closing; provided however, if the said offer was submitted by the Lender and there are no overbids, the Debtors shall retain the right to pay the Lender the full outstanding balance of the Loan, including, without limitation, any and all accrued and unpaid interest thereon in lieu of proceeding to closing on the sale.

7.     As set forth in Section 6.3.3 of the Plan, any Section 363 Motion shall include *inter alia* bidding procedures which (i) require any and all bidders be qualified (a) by providing reasonable evidence of their financial capacity to close under a sale and (b) such other reasonable requirements of qualification as are required by either Debtors or Lender, (ii) provide that if a successful bidder shall default under its obligation to acquire the Debtors' assets, then the next-highest bidder shall become the successful bidder, and (iii) contain such other customary or reasonable provisions as are reasonable required by either Debtors or Lender.

8.     The Debtors' bankruptcy cases shall remain open and not closed until after (x) the closing under the Sale Agreement or, if applicable, after the closing under the Section 363 Sale (and the repayment of the Loan), or (y) any other repayment of the Loan occurring after the Sale Agreement has been terminated.

9.     In accordance with 11 U.S.C. §1142, upon the entry of this Order, the Debtors, acting by and through its officers, directors and agents, and the Disbursing Agent, acting by and through its officers, directors and agents, be, and hereby are, authorized to take any and all actions necessary or appropriate to implement the Plan, without any further Order of the Court.

10.    Pursuant to 11 U.S.C. §1146(a), the transfer of, or the making or delivery of an instrument of transfer for, the real property owned by the EGC Debtor located at 5180 West Chester Pike, Edgmont Township, Delaware County, (Folio Nos. 19-00-00415-00 and 19-00-00416-00) and Willistown Township, Chester County, (Parcel Nos. 54-09-0008.0000 and 54-09-0009.0000) Pennsylvania, consisting of 189.752 acres more or less (the "Real Property") shall constitute a "transfer under a plan" within the purview of §1146(a) and shall not be subject to transfer, stamp or similar taxes in accordance with such section.  Any sale or transfer of the Real Property shall be, or be deemed to be, under the Plan, and the proceeds of such sale or transfer shall be used to fund the Plan and the sale or transfer of the Real Property shall constitute a "transfer under the Plan" within the purview of §1146(a) and shall not be subject to transfer, stamp or similar tax imposed by the Commonwealth of Pennsylvania, the County of Delaware, or the County of Chester in connection with the transfer of the Real Property or the making or delivery of an instrument of transfer for the Real Property.  The Recorder of Deeds for Delaware County and Chester County are hereby directed to accept for filing or recordation all instruments of transfer for the Real Property to be filed or recorded without the payment of any such taxes.

11.    Except as to the Purchaser's liability to pay the Purchase Price (as defined in the Sale Agreement) or, if applicable, the successful bidder at the Section 363 Sale paying the amount of his/her bid to the Debtors, pursuant to 11 U.S.C. §§ 363 and 1123, the sale and transfer of the Real Property to the Purchaser (or, if applicable, to the successful bidder at the Section 363 Sale) and all other transferred assets upon the closing will be a legal, valid, and effective transfer of the Real Property (and all other transferred assets) and vest the Purchaser (or, if applicable, the successful bidder at the Section 363 Sale) with absolute right and title in and to the Real Property (and all other transferred assets) free and clear of mortgages, security

8

interests, conditional sale or other title retention agreements, claims of governmental entities (including but not limited to claims for taxes, real estate taxes, interest and/or penalties), claims arising under bulk sales or similar laws, claims of the Debtor's employees or employee benefit plans (including but not limited to claims for wages, salaries, commissions, vacation, severance, health or life insurance, or other employee benefits), charges, mechanics liens, pledges, liens, claims, judgments, demands, easements, charges, encumbrances, defects, options, restrictions of all kinds, any claims under any contract or statute, or in tort, that the Purchaser is the successor in interest to the business of the Debtors as it relates to the Real Property (and all other transferred assets), any post-petition administrative claim in the Debtors' bankruptcy cases, and any other interest (including, without limitation, liens, claims, encumbrances, causes of action and interests (i) that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the EGC Debtor's or Purchaser's interest (or, if applicable, the successful bidder's interest) in the Real Property (and all other transferred assets), (ii) in respect of taxes, or (iii) which arise as a result of any employee benefit plan), whether matured, unmatured, contingent, liquidated or unliquidated (collectively, the "Liens and Interests") with all such Liens and Interests released, terminated and discharged as to the Real Property (and all other transferred assets).   Upon the closing, holders of such Liens and Interests shall be permanently enjoined from asserting such Liens and Interests against the Real Property (and all other transferred assets) and the Purchaser (or, if applicable, the successful bidder at the Section 363 Sale).  All Liens and Interests shall attach to the proceeds of sale with the same extent, validity, and priority as they had with respect to the Real Property (and all other transferred assets) prior to closing and shall be paid as provided by this Plan.

12.     Upon entry of this Confirmation Order, subject only the occurrence of the

Effective Date, the Debtors shall be discharged of all Claims, debts and other obligations to the

extent set forth in 11 U.S.C. § 1141(d).

13.     The conditions to confirmation as set forth in Section 7.6 of the Plan have been

satisfied or waived or will be satisfied by the entry of this Confirmation Order.

14.     The discharge, release and injunction provisions set forth in Section 12.3 and 12.4

of the Plan are made in exchange for consideration, are in the best interest of the Debtors, the

estates and Holders of Claims and Interests and are fair, equitable and integrally necessary

elements of the restructuring and resolution of these chapter 11 cases in accordance with the

Plan.

15.     The entry of this Confirmation Order authorizes the Debtors to take or cause to be

taken all actions necessary or appropriate to consummate and implement the provisions of the

Plan prior to, on and after the Effective Date, and all such actions taken or caused to be taken

shall be deemed to have been authorized and approved by this Court, including without

limitation, the consummation of the financing transactions contemplated by the Loan Documents

and the sale transaction contemplated by the Sale Agreement or, if applicable, a Section 363 Sale

in accordance with the Plan.

16.     In accordance with Section 4.1.2 of the Plan, all applications for compensation for

services rendered and reimbursement of expenses incurred by a Professional Person for any

period from or after the Petition Date through the Effective Date, when such compensation is

sought pursuant to 11 U.S.C. §§503(b)(2) through (b)(5), shall be filed no later than thirty (30)

days after the Effective Date or such later date as the Bankruptcy Court may approve.  Failure to

file an application for compensation timely shall result in such claim being forever barred and discharged.

17.    The failure to reference or discuss any particular provision of the Plan in this Confirmation Order shall have no effect on the validity, binding effect and enforceability of such provision and such provision shall have the same validity, binding effect and enforceability as every other provision of the Plan.

18.    Upon the occurrence of the Effective Date, any requirements that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after the Effective Date shall terminate and the Debtors may employ and pay for all Professionals in the ordinary course of business without any further notice to, action by or order or approval of the Bankruptcy Court or any other party.

19.    The provisions of the Plan and this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

20.    This Confirmation Order is and shall be deemed to be a separate Confirmation Order with respect to each of the Debtors in each of the Debtor's separate chapter 11 case. The Clerk of the Bankruptcy Court is directed to file and docket this Confirmation Order in each of the Debtor's Chapter 11 cases.

21.     No fees to the clerk of the Court are due (or any such fees shall be paid within ten (10) days from the date of this Order).

22.     The Plan and its provisions shall be binding upon the Debtors, any holder of a claim or interest, whether or not the claim of such creditor or interest of such equity holder is impaired under the Plan and whether or not such creditor or interest holder has accepted the Plan.

23.     This Court shall retain jurisdiction pursuant to 11 U.S.C. §§105 and 1142 to compel any creditor and party in interest to execute any and all documents necessary to consummate the Plan.

24.     This Court will retain subject matter jurisdiction of post-confirmation disputes in accordance with the terms of the Plan.

25.     Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), the Debtors shall file and serve notice of entry of this Confirmation Order on creditors and parties in interest and the United States Trustee by causing such notice to be delivered to such parties by email or first class mail, postage prepaid.  Further, the Debtors shall file and serve notice of the Effective Date of the Plan by causing such notice to be delivered to such parties by email or first class mail, postage prepaid.

26.     The stay provided by Bankruptcy Rule 3020(e) shall not apply to this Confirmation Order.  Immediately upon its entry, this Confirmation Order and the terms of the Plan shall be deemed binding upon:  (a) the Debtors, (b) all Holders of Claims and Interests whether or not Impaired under the Plan and whether or not, if Impaired, such Holders accepted the Plan; (c) any other party in interest in these chapter 11 cases; (d) any Person who made an appearance in these chapter 11 cases, and (e) each of the foregoing's respective heirs, successors, assigns, agents, attorneys, affiliates and beneficiaries.

27.     This Confirmation Order is a final order and the period in which an appeal must

be filed shall commence upon the entry hereof.

**BY THE COURT:**

8/12/15

_____
STEPHEN RASLAVICH
U.S. BANKRUPTCY JUDGE

13